## AMBROSE LANFEAR v. LOUIS MESTIER.

In an action to annul a judgment, it must appear that the party seeking to annul the judgment has conformed to those essential requirements which equity exacts from suitors who invoke its aid. He must have used all reasonable diligence, and not neglected to use such means as he possessed, to prevent the evil of which he complains.

The military order of General Shepley, Military Governor of Louisiana, requiring the Judges of other Courts in the Parish of Orleans to hold the sessions of the Fourth and Fifth District Courts of New Orleans, for the purpose of terminating pending cases, gave such Judges full power to hold those Courts for that purpose.

Courts will judicially take notice, without proof, of whatever ought to be generally known within the limits of their jurisdiction; and this Court cannot ignore an historical fact in relation to the source whence Judges of Courts, over which it exercises appellate jurisdiction, derived their power to preside in other tribunals, at a time when the State laws were merely subsidiary to military rule.

APPEAL from the Fifth District Court of New Orleans, *Leaumont, J.* *Miles Taylor, for appellant.*—Louis Mestier instituted a suit in the Fifth District Court of New Orleans, against the New Orleans, Opelousas and Great Western Railroad, and Ambrose Lanfear, on the 3d of March, 1859, in which he claimed $15,000 as damages from the defendants in solido, for certain acts therein charged. This suit was brought by Pierre Soulé, as the attorney of petitioner; and it was put at issue by answer filed by the respective defendants; that by Ambrose Lanfear, through his attorney, M. M. Cohen, and that of the Railroad Company, by their attorney, G. A. Breaux.

The case, after it was put at issue, was tried in December, 1859, before a jury, and a verdict was given against Lanfear, one of the defendants, for the sum of $10,000, and a judgment was rendered on the verdict,

43

which was signed on the 10th of December, 1859. From this judgment Lanfear appealed, and the case was heard on appeal in the Supreme Court.

On the appeal, Lanfear was represented by H. M. Spofford and his original counsel; and the Supreme Court, after hearing the case, gave a judgment on Monday, June 10th, 1861, in which they reversed the judgment of the lower Court, and remanded the case for a new trial.

The judgment rendered by the Supreme Court was filed in the Fifth District Court on the 22d of June, 1861. There were no further proceedings had in the case from this time, until the city of New Orleans was taken possession of by the national forces, in the latter part of April, 1862. The Honorable H. B. Eggleston, who had before been the Judge of the Fifth District Court of New Orleans, withdrew at that time from the discharge of the duties of that place; and there was no Judge appointed to the Fifth District Court until the present incumbent of that office was appointed, and entered on the duties of the place in the year 1865.

All the counsel employed in the case withdrew from the city, and were absent until after July, 1864. No regular sessions of the Fifth District Court, for the transaction of business, were holden from the time of the occupation of the city in 1862, by the Federal authority, until the reorganization of the Court in 1865. Nor was there any Judge appointed to fill the place of Judge of the Fifth District Court, during all that time.

On the 28th of May, 1864, the Court, presided over by a Judge of one of the other District Courts of the city, met for the calling of cases, and the case of *Louis Mestier* v. *The New Orleans, Opelousas and Great Western Railroad Compang, and Ambrose Lanfear*, was fixed for trial on the 6th of June, 1864, and there was an order made directing the Sheriff to summon a jury. No other case was then fixed for trial. No public notice was given in the newspapers of the intention of the Court to fix causes for trial in the Fifth District Court, or that this cause had been actually fixed.

The case then stood on the docket of the Court as in charge of M. M. Cohen and G. A. Breaux, for the defendants.

On the 6th of June, the cause was continued on to the 28th of June, 1864, and on that day it was taken up for trial by H. B. Eggleston, as counsel for the plaintiff, and tried ex parte—the defendants not being represented—and the jury then empanelled gave a verdict against Lanfear for the sum of $15,000. Judgment was rendered on this verdict on the 28th of June, and signed on the 2d of July, 1864; and as no notice of judgment was issued, or served on the defendant, Lanfear, he had no knowledge of these proceedings until an execution had been issued on the judgment, and the Sheriff demanded payment of it under the execution, subsequently to the expiration of the delay given by law, within

which a suspensive appeal may be taken.

The defendant, Ambrose Lanfear, then instituted his suit of nullity against this judgment, setting up all the above recited facts, and alleging that there having been no Judge appointed for the Fifth District Court, and he, petitioner, having no knowledge, information or belief, that the said cause could be proceeded in, or tried in the Fifth District Court while the office of Judge of the Court was vacant, had employed no other attorney, or counsellor at law to represent him in the case; and that he had no knowledge, information or belief, that any proceedings had been taken in the said case after the place of Judge of the Fifth District had been vacated by the withdrawal of H. B. Eggleston, the former Judge, until on or about the 21st or 22d of July, 1864, on which day one of the deputies of the Sheriff of the parish of Orleans demanded payment of him of the sum of $15,000, with interest and costs, under the execution issued on the 28th of June, 1864, and signed on the 2d of July, 1864; and that he had been condemned unheard, ex parte, and without notice; that in the premises some improper advantage was taken of him, the manner of which was unknown to him; that it would be against good conscience to execute the judgment, and that the judgment was void, and ought to be annulled; and praying that Louis Mestier, the plaintiff in the judgment, should be cited before the Court to answer his petition; and that after legal proceedings had, the judgment should be annulled, and declared void and of no effect; and that an injunction should, in the meantime, stay all further proceedings on it.

The injunction applied for was refused; and after various proceedings, the defendant, Lanfear, whose property was under seizure on the execution issued upon the judgment, and was advertised to be sold, paid the amount of the judgment into the hands of the Sheriff on the very morning of the day fixed for the sale of his property seized to satisfy it. But notwithstanding the refusal of an injunction to stay the proceedings under the judgment, the defendant, Lanfear, still prosecuted his action of nullity against it, and the case was put at issue by the defendant in the action of nullity, Louis Mestier filing his answer, in which he pleads the general issue. Subsequently to the filing of this answer, the plaintiff in the action of nullity, who had paid the amount of the judgment, filed a supplemental petition, in which he set up that fact, and further prayed that there should be a judgment in his favor against Mestier, for the amount which he had been illegally compelled to pay; and the defendant, Mestier, filed his amended and supplemental answer, in which he alleges that the action of nullity had been abandoned by the voluntary execution of the judgment attacked for nullity, in making payment to the Sheriff under the execution.

The case was tried upon these issues, and all the facts set up by the plaintiff, as grounds of nullity with respect to the judgments, were established by the evidence adduced.

It also appeared by the evidence, that the plaintiff in the action of nullity, had actually paid the judgment obtained against him in June, 1864, by Mestier, and which is the subject of this action of nullity, after his property had been advertised for sale, and on the very day when the sale would have taken place, as alleged by the plaintiff, Lanfear, in his supplemental petition.

This payment, so made by Lanfear, is set up by the defendant, Mestier, and is made by him the foundation of a plea on his part, that the payment was a voluntary execution of the judgment attacked, and that the making of it amounted to an abandonment of the action of nullity. It is impossible for the plaintiff in the action, to conceive upon what principle such a plea is based, unless it be upon the assumption of the defendant, Mestier, that the plaintiff, Lanfear, after having had an illegal judgment improperly obtained against him, ex parte, could have no right to contest it unless he permitted him, Mestier, to take his, Lanfear's, property in payment of the amount specified in the judgment, at two-thirds of its appraised value. As the plaintiff does not apprehend that the recognition of any such principle, by any Court, is possible, he will leave this plea without further remark, and will present the points and authorities on the merits of the case for consideration :

1. The right to the action of nullity is given in Articles 604, 605, 606, 607, of the Code of Practice. But the causes on which the action may be founded, are not all enumerated in the Articles of the Code; and it has been repeatedly held by our Courts that the action can be maintained in other cases, besides those there enumerated. *Chinn* v. *The First Municipality*, 1 R. R. 523; *Norris* v. *Fristoe*, 3 A. 646; *Musson* v. *Richardson*, 11 R. R. 37.

2. There is no provision of law for the transaction of business in a District Court of New Orleans, when there is no Judge of that Court.

The cases in which, under the law, a Judge can act and exercise the judicial functions in a different Court from that to which he was appointed, are those in which the Judge of the Court, whose functions are to be supplied, has been recused; has recused himself, is incapacitated from holding it by reason of illness, or has leave of absence. Acts of 1855, p. 495, §§ 4, 13, 15. When there is no Judge of a Court, there is no Court, and the judicial functions cannot be exercised.

This is illustrated by what takes place in England, with respect to the action of the high Court of Chancery. Where there is a Chancellor, he is permitted to call in any Judge he pleases, to try cases in chancery, and he calls in frequently, in fact, Judges from the Courts of the King's Bench, Common Pleas and from the Court of Exchequer. But when there is a vacancy in the Court, and there is no Chancellor, no business can be done in it. There is then no Judge of the Court; and in the presence of such a fact, the other Judges cannot act, because there is no

Judge to be replaced.    See Campbell's Lives of the Chancellors.    Third. Ignorance of fact excuses.    1 Story's Equity Jurisprudence, §§ 140, 146, note 2.

The object of all laws, with reference to the prosecution and defence of actions in Courts of justice, is to have justice done between the parties, after a fair trial, had on due notice.    Both parties are equal before the law, and it is the design of the lawmaker to place litigants in Courts on an equal footing.

No advantage is to be given to one over another; and when an unjust advantage is obtained by one party over another, as in this case, it is the duty of the Court to apply a remedy, and deprive the party of that advantage.

In the present case Lanfear, the plaintiff, was ignorant of the following facts :

1. That business could be done in the Fifth District Court, when there was no Judge appointed to fill the office of Judge of the Court.

It is true, it is said that there was an order of the military Governor of the State, authorizing the Judge of other Courts to act in this.    No such order has been placed in evidence, nor have I ever seen one, though I have enquired diligently, with a view to ascertain whether it did or did not exist.    But if such an order had been made, it is a fact of which Lanfear was ignorant, and in the absence of any proof, bringing home knowledge of it to him, personally, it is, so far as to the questions involved in this case, as though none such had ever been made.    For though all men are necessarily presumed to know the laws of a country, no one can presume to have knowledge of any fact which constitutes an exception to the law.    To affect the plaintiff, Lanfear, not only must such an order be shown, but the knowledge of its existence must be brought home to him by positive proof.

2. That there was any intention on the part of the plaintiff in the suit, Mestier, to proceed in it.

Nothing had been done in it since June, 1861.    The counsel of all the parties had been absent from the city since the spring of 1862, and had not returned.    No public notice was given through the newspapers of the fixing of cases.    No notice of any kind was given to Lanfear, personally, and the case was tried ex parte.

And in consequence of all this, great mischief has been done to the defendant in that suit, Ambrose Lanfear, the plaintiff in this action of nullity.

1. He was deprived of the opportunity of objecting to improper evidence ; of offering evidence in his own behalf ; and of contesting the points involved in the case by arguments addressed to the jury.

2. The effect of this, to the injury of the defendant in the judgment, Lanfear, is shown by the fact that the jury gave a verdict against him for $15,000, when a previous one for $10,000 had been set aside by the Su-

preme Court, because it was excessive.

3. The defendant was deprived of all opportunity to obtain a suspensive appeal, because in consequence of the proceedings being carried on in the manner and under the circumstances shown by the proof, he had no notice of them whatever, actual or constructive, until the demand made upon him by the sheriff for the payment of the judgment, under the authority of the execution issued on it, after the delay given for taking a suspensive appeal had expired.

If, as it is abundantly shown by all the evidence before the Court, the petitioner Ambrose Lanfear "was condemned unheard, ex parte, and without notice, and that some improper advantage was taken of him," etc., then the judgment ought to be annulled, and a judgment should be given against Mestier for the amount improperly and unjustly received by him under this null and void judgment.

*Eggleston & Howe, for appellee.*—This is a suit of nullity. The defendant, Louis Mestier, in June, 1864, recovered in the Fifth District Court of New Orleans, a judgment against Ambrose Lanfear, in a suit which had been long pending, for the sum of $15,000.

The case had been regularly called and fixed for trial, and duly posted on the bulletin board of the Court. It was tried before a jury, the defendant Lanfear not appearing at the trial, either personally or by attorney of record.

No motion was made for a new trial, nor was any appeal taken, either suspensive or devolutive.

An execution having been issued against the property of Lanfear, he caused to be prepared the petition in the case at bar, which purports to be a petition in a suit of nullity, and applied successively to Judges Thomas and Leaumont for an injunction, which was refused.

The petition, it will be observed, is entitled in the Fifth District Court of New Orleans, and verified —— 1864.

The injunction being denied, Mr. Lanfear then procured from Major-General Banks, ex parte, a stay of proceedings, by order dated August, 1864.

Mr. Mestier then applied to Major-General Hurlbut, the successor of Banks, to set this stay aside, and General Hurlbut so modified the order as to stay proceedings until the determination of the suit of nullity, which Lanfear alleged he had commenced, namely, the present suit.

By the same order, Mr. Lanfear was directed to pay the amount of the judgment into the hands of the sheriff, which he did.

In December, 1864, finding that the suit of nullity was not being prosecuted, and therefore likely never to be determined, Mr. Mestier never having even been cited, General Hurlbut revoked his stay, and remitted the parties to their rights at law. Order dated —— 186— .

An alias fi. fa. was then issued in the suit of *Mestier* v. *Lanfear*, and

the sheriff was requested to seize and pay over to Mestier the $15,000 which had been deposited. The sheriff declining to take this course, a rule was taken to compel him; and at the same time Mr. Lanfear took a rule in the present case (the suit of nullity), for an injunction against the judgment and execution.

Both rules came on for trial before Judge Fellowes, sitting as Judge of the Fifth District Court, and both were discharged on the —— day of January, 1865; a third Judge of our District Courts thus declaring that the petition in this suit of nullity exhibited no cause of action.

In the meantime, under the alias fi. fa. upon the judgment sought to be annulled, real estate of Lanfear had been seized and was about to be sold, when, on the —— day of January, Mr. Lanfear paid the amount of the judgment to the sheriff.

The present suit of nullity then proceeded to trial before Judge Leaumont, of the Fifth District Court, and judgment was given in favor of Mr. Mestier, from which. Mr. Lanfear has appealed.

It has thus been judicially declared four successive times, by three different judges, that, under the pleadings and proof, the plaintiff in this action of nullity cannot recover.

To his recovery we oppose the following points :

1. The judgment by default, in case of *Mestier* v. *Lanfear*, being regularly taken, cannot be attacked by a suit of nullity. The remedy of the defendant therein was an appeal. *Seymour* v. *Cooley*, 9 La. 79. *McKnight* v. *McConnell*, 14 A. 396.

2. The right of Mr. Lanfear to invoke an equitable consideration of his case has been taken away by his own neglect. Equity is not an amiably weak contrivance for repairing the carelessness of suitors. It is a system firm though flexible, and abhors laches.

And therefore, the Supreme Court of Louisiana have said, in regard to a plaintiff in an action of nullity, who had himself been neglectful : "If, by reasonable diligence, he could have known such a matter, or if he have been guilty of laches, he cannot be relieved." *Norris* v. *Fustoe*, 3 A. 646. *Swain* v. *Sampson*, 6 A. 799.

And, where one personally cited allowed a default to be made final against him, without interposing any plea or applying for further time to answer, or for a continuance, or suggesting an inability, at the proper time, to make a defence, it was held that he could not enjoin and annul the judgment, and that Art. 607 C. P. does not apply to such cases. *McRae* v. *Purvis*, 12 A. 85.

And in another case, where there was no fraud on plaintiff's part, and the defendant had been guilty of laches, it was held that the defendant could not sustain an action of nullity, but that his remedy, if any, was by appeal. *Knight* v. *McConnell*, 14 A. 396.

To permit an action of nullity in such cases, said the Court, in *McRae* v. *Purvis*, would be a premium for neglect.

3. So far as the point made in the petition, that the Fifth District Court was without power to give the judgment in *Mestier* v. *Lanfear*, it is evident that, by taking this ground, Mr. Lanfear exposes himself to a dilemma, on one horn or the other of which he is likely to be impaled.

For if the Fifth District Court had power, in June, 1864, to give the judgment, then there is nothing in the objection.

If it had no power to give the judgment, in June, 1864, it had no more, in August, 1864, to grant the injunction prayed for in the present suit, or to send out a citation, or to give a judgment of nullity.

In brief, if Mr. Lanfear's petition, in this respect, be tenable, he presents the curious spectacle of a suitor asking a Court to give a judgment because it has no power to give one.

4. Lanfear voluntarily executed the judgment by paying it, and thereby renounced all objections and exceptions to the legality of the proceedings. C. P. 567. 2 L. R. 265. 4 Rob. 128. 5 An. 598.

The judgment was rendered during the June term of the Court, upon the verdict of a jury regularly summoned, and after the case had been regularly called, fixed and placed on the manifest of the Court, according to the rule of Court recited on the record. If Lanfear was not there to defend himself, he can only impute his absence to his own negligence. He was in Court by process and his answer, and he should have watched the calling and fixing of causes. The absence of his counsel was no cause to delay the suit, for he might have engaged others. 13 L. R. 532.

The injunction was refused by two judges, because his petition disclosed no cause of nullity.

It is somewhat of an absurd inconsistency for Lanfear to deny the competency of the Judge who held the Fifth District Court, tried the cause and rendered the judgment, and then to apply to the same Judge, and sue to annul the judgment which the Judge was disqualified to give. A more daring solecism in jurisprudence was never enunciated. If he had any rights left, it was by an appeal; but this he lost by paying the judgment.

Lanfear's own conduct proves that he had no confidence in his effort to annul the judgment by suit. He obtained a military injunction from Banks, stopping the sale, and waited months before he had the petition served on Mestier. An appeal to the army to decide a civil suit in Court was never known until the advent of Butler, Banks and Hurlbut, in this city. When he invoked the aid of military power, it showed that he had no confidence of success by an appeal to the Courts. Lanfear has failed in showing any fraud, forgeries, ill practice, or equities of any kind, except the æquitas cerebrosa of the visionary, which will justify the annulment of the judgment of the Fifth District Court.

The appellee asks for its affirmance.

ILSLEY, J. This is an action to annul a judgment rendered by the Fifth District Court of New Orleans, in the month of June, 1864, in the suit then therein pending of "Louis Mestier v. The New Orleans and Opelousas Railroad Company and Ambrose Lanfear," by which said judgment, Louis Mestier recovered from Ambrose Lanfear the sum of fifteen thousand dollars.

This last-mentioned suit had been previously before this Court on appeal, and had been remanded to the District Court for a new trial, the defendant Lanfear having been, by the first judgment, condemned to pay the plaintiff Mestier ten thousand dollars.

The principal ground of nullity now in this suit set up by Lanfear is, that the suit remanded was tried ex parte in the District Court, by an incompetent Judge; that he had no notice of the trial thereof, and was not represented by counsel thereat.

The defence against this action is a general denial and the special averment that the judgment sought to be annulled is valid in all respects, and that the defendant, Lanfear, has renounced all objections and defences to the same, if any ever existed, by his own conduct and acts. By an amended answer, Mestier alleged that, since the filing of his original answer, Lanfear has paid the judgment which he now seeks to set aside, and can no longer proceed against the same, the objections to it having been renounced by the voluntary execution and payment thereof.

Lanfear admits the payment of the judgment to Mestier, but says it was enforced against him, and that he paid it under execution issued thereon.

The main ground of nullity is the legal incapacity of the Judge of the *Third* District Court to preside and try cases in the *Fifth* District Court, so long as the Court has no regular incumbent Judge.

If this incompetence is established by Lanfear, Article 612 of the Code of Practice entitles him to have the judgment objected to, pronounced a nullity—non est major defectus quam defectus potestatis—but, if in this he is unsuccessful, all the other grounds relied on by him must prove unavailable.

The evidence does not enable us to say, with any degree of certainty, whether, at the trial of the case of *Mestier* v. *Lanfear*, in the Fifth District Court, the judgeship therein was vacant. It merely establishes the fact that no Judge was appointed for that Court, after the capture of the city, until the appointment of Judge Leaumont ; but, taking this for granted, was the Judge of the Third District Court empowered by any law of the State to try and decide cases in the Fifth District Court ? We can find nothing in the Act of the Legislature of the 23d February, 1860, which purports to amend the act entitled "An act relative to District Courts, approved March 15th, 1865," so confidently relied on by Mestier's counsel, to enable a neighboring Judge to try cases in another Court, wherein the judgeship is vacant.

44

The clause relied on, in the Act of 1860, reads thus :

"Whenever any District Judge shall be absent from his district, or shall recuse himself or be recused, or shall be unable to act by reason of sickness, or any other cause whatever, or whenever the office shall become vacant by reason of death, resignation or otherwise, the Judge of the neighboring district shall have the power, and it shall be his duty, to grant all orders which might be granted by the Judge of the district."

This evidently refers to the orders which, by the article amended, a Judge was required to grant *in chambers*, and such orders as are mentioned in the 32d section of the Act amended by the Act of 1860.

By the Act of 1855, No. 255, page 316, which refers exclusively to the Courts of New Orleans, provision was made for supplying temporarily, in case of recusation of the Judge of any District Court, a Judge from one of the other Courts to preside in place of the Judge recused ; but there is nothing in that act that authorizes judges of other Courts to preside in one wherein the judgeship is vacant, by reason of death, resignation, or otherwise. It does not, however, necessarily follow that, because the Judge of the Third District Court did not derive his authority to try a case in the Fifth District Court from the State laws, that he was acting without authority in presiding thereat in that Court.

At the time of the rendition of the judgment sought to be annulled, the city of New Orleans was under the complete dominion and absolute control of the Federal military authorities. The government established by them recognized no law but such as met its unqualified sanction and approval. It not only prescribed the rule of conduct for the inhabitants of the conquered city, but established a judiciary, appointed judges, whose judicial functions were exercised under its supervision. Lanfear, the plaintiff, fully realized this state of things, for, in the very proceeding of which he now complains, he invoked, and successfully too, the aid of the military. It was from this military government that the Judge of the *Third* District Court derived his authority to exercise in the *Fifth* District Court the same functions as the Judge of that Court might have exercised.

The defendant offered in evidence, but did not produce, the order of General Shepley, military governor, requiring the judges to hold the sessions of the Fourth and Fifth District Courts, and to terminate pending cases.

Having judicial knowledge that such an order was issued and acted upon, can this Court notice it without proof ? Courts will judicially take notice, without proof, of whatever ought to be generally known within the limits of their jurisdiction ; and this Court cannot ignore an historical fact in relation to the source whence Judges of Courts, over which it exercises appellate jurisdiction, derived their power to preside in other tribunals, at a time when the State laws were merely subsidiary to military rule.

But it is urged by Lanfear that he had no notice of the trial ; that his counsel of record in the suit were absent from the State when the trial took place ; that he was not represented thereat, and that some unfair advantage was taken of him.

In the case of *Swain* v. *Sampson*, 6 An. 800, this Court said : "We held, in *Tristoe* v. *Norris*, 3 An. 646, that, to annul a judgment, a case must be exhibited of matter which would make it against good conscience to execute the judgment ; matter of which the injured party could not have availed himself in the former litigation, or of which he was prevented by fraud or accident from availing himself. The matter must also be such as the party, by the use of reasonable diligence, could not have known ; for, if there have been *laches* or negligence, that destroys the title to relief." Story's Equity Jurisprudence, § 887. Story's Equity Pleadings, § 414. *Garlick* v. *Reece*, 8 L. R. 101. *McMecken* v. *Millaudon*, 2 L. R. 180. *Winn* v. *Womack*, 15 An. 273.

Whatever hardship might result to Lanfear from the judgment complained of, he must, to be relieved from it, have conformed to those essential requirements, which equity itself exacts from suitors who invoke its aid ; he must have used reasonable diligence, and not have been guilty of laches or negligence. Has he used every reasonable diligence, and not neglected to use such means as he possessed to prevent the evil of which he is complaining ?

He was well acquainted with the nature of the suit pending against him, and all the facts and circumstances thereof, for it had been already tried contradictorily with him in the District Court and in this Court, on appeal, and he had succeeded in reversing the judgment rendered against him in favor of Mestier for a large amount, and having the case remanded to the lower Court to be tried de novo.

He must have been aware of the absence of his counsel from the city, and that the Court in which his suit was pending was open for the transaction of judicial business, and that Mestier had the legal right to have his case tried, whether he was present thereat, personally, or by counsel or not; and yet, residing in the city and being on the spot, he takes no steps whatever to engage the services of other counsel, or to take part in the trial of the case. *Locket* v. *Toby*, 10 An. 714; *Shields* v. *Lanna*, 10 An. 193; *Dwight* v. *Richard*, 4 An. 210; and authorities therein cited; 9 Rob. 177; 13 La. 454.

Such laches on his part precludes him from the equitable interference of the Courts; for as was well said in *McRae* v. *Purvis*, 12 An. 85, "to permit an action of nullity in such a case, would be a premium for neglect."

The unsettled and disastrous state of public affairs then prevailing in the city, instead of lulling him into security, should have aroused his vigilance in the protection of his interests, which he should not have suffered to be jeoparded by his own negligence. Apart from the fact, that

the trial took place without his active participation therein, we can perceive neither fraud nor other ill practice, of which, indeed, there is no specific averment, to cancel the judgment; and the presumption of the law is that the proceedings were regular. "Omnia præsumuntur rite et solemniter esse acta donec probetur in contrarium."

The rules of proceeding in our Courts contemplate a fair, legal investigation contradictorily between parties to suits of all issues therein raised; but, wherever they are properly in Court, the law exacts from them vigilant attention to every progressive step in a suit; and this for the very palpable reasons, that neglect of one suitor cannot be allowed to the prejudice of another.

Sharp practice our Courts will not tolerate; but they will not confound this with an active legal prosecution, unopposed, of the remedies which the law affords, indiscriminately, to all suitors.

If the plaintiff is injured by the judgment complained of, the blame cannot be attributable to his opponent; and he can hardly expect that even a Court of equity can take better care of him than he has chosen in the matter he opposes to take of himself.

The judgment of nullity in this suit, rendered by the District Court in favor of the defendant, Mestier, must be affirmed.

It is therefore ordered, adjudged and decreed that the judgment of the District Court be and the same is hereby affirmed, the costs of appeal to be paid by the appellant.