The State v. Nossaman.

---

No. 22,993.

THE STATE OF KANSAS, *Appellee*, v. EARL A. NOSSAMAN, *Appellant*.

SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*Statute Forbidding Sale of Cigarettes Constitutional —Within Police Power of State.* The act (Laws 1917, ch. 166) prohibiting and prescribing penalties for bartering, selling or the giving away of cigarettes or cigarette papers and the keeping of them for barter, sale or free distribution is within the police power of the state and does not violate any of the principles of the fourteenth amendment to the constitution of the United States.

2. SAME—*Possession of Cigarettes as Evidence.* The provision making the possession of cigarettes and cigarette papers *prima facie* evidence of the selling and keeping for sale of the prohibited articles is not a denial of due process of law.

3. SAME—*Several Unlawful Sales in Evidence—State not Required to Elect.* *Held* further, that under the evidence there was no error in refusing to require the county attorney to elect upon which sales made by the defendant he would rely for a conviction.

4. SAME—*Verdict Supported by Evidence.* The evidence is held to be sufficient to support the verdict of the jury.

The State v. Nossaman.

Appeal from Harper district court; GEORGE L. HAY, judge. Opinion filed November 6, 1920. Affirmed.

*E. C. Wilcox,* of Anthony, for the appellant.

*Richard J. Hopkins,* attorney-general, and *Vernon Day,* county attorney, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: The defendant appeals from a decision adjudging him to be guilty of violating certain provisions of chapter 166 of the Laws of 1917, prohibiting the barter, sale or giving away of cigarettes or cigarette papers and also the keeping and having them for barter, sale and free distribution.

The information charged the making of twelve separate sales to a number of persons, and in the thirteenth count he was charged with keeping cigarettes and cigarette papers for barter, sale and free distribution. The jury found him guilty of separate sales under seven of the counts and also guilty under the thirteenth count for the keeping of the prohibited articles, but found him not guilty under three of the counts charging sales.

The defendant contends that the act under which he was convicted denies to him the equal protection of the laws and deprives him of liberty and property without due process of law in violation of the fourteenth amendment of the constitution of the United States.

In substance the first section of the act makes it unlawful to barter, sell or give away cigarettes or cigarette papers and also to keep them in a store or other place for barter, sale or free distribution. It provides that upon proper complaint there may be a search for and a seizure and confiscation of such articles if found. It contains the added provision that the possession of the prohibited article shall be considered *prima facie* evidence of a violation of the act.

The second section declares it to be unlawful to advertise cigarettes or cigarette papers offered for sale in any newspaper, periodical or circular or upon any street, sign, placard, billboard, or in any package, store, window, show case or any other public place.

The third section makes it unlawful to sell or give away cigarettes or cigarette papers or tobacco to anyone under twenty-one years of age, and likewise makes it unlawful for the proprietor of any place of business to permit minors to frequent such place while in the act of using tobacco in any form.

The fourth section provides that a violation of the preceding sections shall be a misdemeanor punishable by a fine of not less than $25 nor more than $100 for each offense.

The defendant bases his claim of invalidity upon the ground that the act prohibits the sale of tobacco in one form and permits its sale in other forms and that the classification so made is arbitrary and unreasonable. For a number of years there has been a well-settled opinion that the use of cigarettes, especially by persons of immature years, was harmful, and the courts have recognized that they were deleterious in their effects. Their sale and use have been regulated and prohibited by legislative bodies, and these measures have been upheld as a proper exercise of the police power. An ordinance of the city of Chicago provided that only licensed persons of good character and reputation could sell cigarettes and that none could be sold within a prescribed distance of a schoolhouse. A license fee of considerable amount was required to be paid, and, besides, the licensee was required to give a bond that he would obey the laws. A person convicted of violating the ordinance challenged the validity of the regulation, insisting that the ordinance and judgment operated to deprive him of liberty and property, thereby violating the federal constitution. Among other claims it was urged that the singling out of one form of manufactured tobacco for regulation without applying the same regulation to other forms in which tobacco may be used was an invalid exercise of power. The court overruled the objection and held that the measure did not violate any principle of the federal constitution. In deciding the case it was said:

"It being well known that young persons of weak and immature minds are more liable to use tobacco in the form of cigarettes than in any other form, a legislative body may properly provide for the regulation and sale of that article in the form in which it is likely to be most deleterious and injurious, and may restrict the sales of that particular form of tobacco. Paragraph 66 before quoted expressly authorizes the

The State v. Nossaman.

adoption of ordinances necessary to police power, and paragraph 78 is an express authorization of the city council to make all regulations necessary or expedient for the promotion of health or the suppression of disease. Under these two provisions express authority is granted the municipality to pass all ordinances or requirements tending to promote the public health, morals, security, comfort and welfare of the community. Such legislation is included within the provision authorizing the enactment of police regulations. The most important of police powers is that of caring for the health of the community, and that is inherent in a municipality, and may be exercised whether expressly granted or not, because the preservation of the health of the public is indispensable to the existence of the municipal corporation." (*Gundling v. City of Chicago,* 176 Ill. 340, 348.)

The case was taken on appeal to the United States supreme court where the judgment was affirmed, that court holding that the regulation of the sale of cigarettes was a question for the state to determine for itself and was not a violation of any provision of the United States constitution. (*Gundling v. Chicago,* 177 U. S. 183).

A statute of Tennessee provided that the sale of cigarettes, cigarette papers or substitutes for the same or the bringing of these articles into the state for the purpose of selling or giving them away, was a misdemeanor punishable by a fine of $50. W. B. Austin, who purchased packages of cigarettes from a dealer in another state and sold a package to a customer in his place of business in Tennessee, was convicted. He contended that the act was beyond the power of the state legislature and violated the Federal constitution. In treating the question whether cigarettes as shipped in packages were articles of commerce, subject to state control and prohibition, the supreme court of Tennessee said:

"Are cigarettes legitimate articles of commerce? We think they are not, because wholly noxious and deleterious to health. Their use is always harmful; never beneficial. They possess no virtue, but are inherently bad, and bad only. They find no true commendation for merit or usefulness in any sphere. On the contrary, they are widely condemned as pernicious altogether. Beyond question, their very tendency is toward the impairment of physical health and mental vigor. There is no proof in the record as to the character of cigarettes, yet their character is so well and so generally known to be that stated above, that the courts are authorized to take judicial cognizance of the fact. No particular proof is required in regard to those facts which, by human observation and experience, have become well and generally known to be true (*Schollenberger v. Pennsylvania,* 171 U. S., 1; 1 Greenl. Evi., sec. 6; 1

Whart. Evi., sec. 282; 1 Jones Evi., secs. 129, 134; *Lanfear v. Mestier,* 18 La. Ann., 497 (S. C., 89 Am. Dec., 658, and note 693); *State v. Goyette,* 11 R. I., 592; *Watson v. State,* 55 Ala., 158); nor is it essential that they shall have been formally recorded in written history or science to entitle courts to take judicial notice of them. *Boullemet v. State,* 28 Ala., 83; 12 Am. & Eng. Enc. L. 199. It is a part of the history of the organization of the volunteer army in the United States during the present year that large numbers of men, otherwise capable, had rendered themselves unfit for service by the use of cigarettes, and that, among the applicants who were addicted to the use of cigarettes, more were rejected by examining physicians on account of disabilities thus caused than for any other, and perhaps, every other reason. It is also part of the unwritten history of the legislation in question that it was based upon and brought to passage by the firm conviction in the minds of legislators and of the public that cigarettes are wholly noxious and deleterious. The enactment was made upon this idea, and alone for the protection of the people of the State from an unmitigated evil." (*Austin v. State,* 101 Tenn. 563, 566.)

This case, too, was appealed to the supreme court of the United States, and while it declined to take judicial notice that special injury resulted from the use of cigarettes or to approve the opinion of the Tennessee court that they are "inherently bad and bad only," it did hold that a restriction or prohibition of the sale of cigarettes, enacted by a state for the protection of the public health and welfare, is within the police power. In upholding this statute and affirming the judgment that court said:

"Cigarettes do not seem until recently to have attracted the attention of the public as more injurious than other forms of tobacco; nor are we now prepared to take judicial notice of any special injury resulting from their use or to indorse the opinion of the supreme court of Tennessee that 'they are inherently bad and bad only.' At the same time we should be shutting our eyes to what is constantly passing before them were we to affect an ignorance of the fact that a belief in their deleterious effects, particularly upon young people, has become very general, and that communications are constantly finding their way into the public press denouncing their use as fraught with great danger to the youth of both sexes. Without undertaking to affirm or deny their evil effects, we think it within the province of the legislature to say how far they may be sold, or to prohibit their sale entirely, after they have been taken from the original packages or have left the hands of the importer, provided no discrimination be used as against such as are imported from other states, and there be no reason to doubt that the act in question is designed for the protection of the public health." (*Austin v. Tennessee,* 179 U. S. 343, 348.)

While the decision dealt mainly with the question of whether the prohibition of the sale of cigarettes shipped in packages from another state was an infringement of the power of congress over commerce, it did hold that it was within the province of the legislature of the state to declare how far cigarettes may be sold or to prohibit their sale entirely after they have been taken from original packages and form a part of the mass of property within the state. It was held that it was not unreasonable for the state to declare under penalties that cigarettes are injurious to public health and welfare and that such an act did not trench upon the liberty of a citizen by preventing him from carrying on a lawful business nor infringe any principle in the fourteenth amendment of the Federal constitution. These decisions practically determine adversely the contentions of the defendant.

The claim that the classification or distinction made between cigarettes and other forms in which tobacco is prepared and wrapped is without substantial merit. It is competent for the state to determine for itself the extent to which it will go in the restriction or prohibition of the sale or use of that which is deleterious to public health or morals. It determined that the sale of cigarettes was a greater menace to the health and welfare of the people than would be the sale or use of tobacco in other forms, and further that the sale of tobacco to minors endangered the public health and safety more than would a sale to adults. It was within the province of the legislature to determine what kinds of tobacco lead to the most hurtful results and further that the use of tobacco was more hurtful to minors than to adults. We think there was sufficient ground for the classification that was made. The legislature is not required to cover all evils of a like character in a single act. The fact that it has placed one of them under the ban of the law without condemning others does not impair the validity of the act. In *Cotting v. Kansas City Stock Yards Co. &c.,* 183 U. S. 79, the supreme court, in speaking of the classifications, said:

"It may often happen that some classes are subjected to regulations, and some individuals are burdened with obligations, which do not rest upon other classes or other individuals not similarly situated. License taxes are imposed upon certain classes of business, while others are exempt. It would practically defeat legislation if it was laid down as

The State v. Nossaman.

a rule that a statute was necessarily adjudged invalid if it did not bring all within its scope or subject all to the same burdens. It would strip the legislature of its inherent power to determine generally what is for the general interest, which interests may often be promoted by regulations affecting one class which do not affect another—certain burdens imposed on one which do not rest upon another." (p. 111.)

In the exercise of the police power the legislature may proceed step by step, condemning that which it deems to be the greatest menace to the health and welfare of the people, leaving further regulation and prohibition for future consideration. One who has violated such a prohibition has no ground for objecting that others escape punishment who have done acts which might have been prohibited and punished. The legislature has drawn the line in good faith between the different forms of tobacco and the classes to whom sales may be made, and this, we think, has been done without violating the constitutional rights of the defendant. (*State v. Olson,* 26 N. D. 304.) While the statute prohibits the sale or keeping for sale of tobacco to minors or of tobacco and materials connected with the smoking of tobacco, that part of the act is not within the charges made against the defendant and is therefore not involved in the case.

There is a further contention that the provision making the possession of cigarette materials *prima facie* evidence of a violation of the act is a denial of due process of law. It is competent for the legislature to make proof of one fact *prima facie* evidence of another fact essential to the guilt of the accused, where the fact presumed has a fair relation to or some natural connection with the fact to be proven. (*The State v. Sheppard,* 64 Kan. 451, 67 Pac. 870; 12 C. J. 1205.) The term *prima facie* evidence carries the inference that such evidence may be rebutted and overcome, and notwithstanding the rule, an accused has the opportunity to submit his evidence and make a full defense. The verdict must rest upon all the evidence which must establish his guilt beyond a reasonable doubt. There is a natural connection between the possession of the prohibited articles and the sale of them, and also of the keeping of them for sale or free distribution. The direct evidence abundantly sustained the charges upon which the defendant was convicted and the instruction calling the

attention of the jury to the statutory rule of evidence did not trench upon his constitutional rights.

There is nothing substantial in the objection that the court refused to require the county attorney to elect upon which sales he would rely for a conviction. The information charged specific sales to particular persons and there was nothing in the evidence to hamper or mislead the defendant or to make an election necessary.

Neither is there any ground for the contention that the evidence does not sustain the conviction under the thirteenth count.

The judgment is affirmed.