No. 37,235

MRS. DAVID LINDQUIST, *Appellant*, v. THE CITY OF LINDSBORG, ELOF HAROLDSON, Mayor, WILLIAM N. OLSON, P. D. LANGERMAN, OLIVER HAWKINSON, EDWARD SAHLIN, MELVIN ANDERSON, W. W. PETERSON, CARL B. ANDERSON, and G. E. MAYDEN, City Councilmen, and VERNER TERNSTROM, City Clerk, *Appellees*.

(193 P. 2d 180)

Opinion filed May 8, 1948.

*Russ B. Anderson,* of McPherson, argued the cause, and *Archie T. Mac-Donald,* of McPherson, was with him on the briefs for the appellant.

*L. H. Ruppenthal,* of McPherson, argued the cause, and *E. W. Jernberg,* city attorney, was with him on the briefs for the appellees.

The opinion of the court was delivered by

WEDELL, J.: The plaintiff appeals from an adverse judgment in a mandamus action in which she sought to compel the city of Lindsborg, the mayor and council, to issue a license to sell cereal malt beverages at retail at a named address. The city clerk was also made a party defendant.

An alternative writ was issued. The city challenged the writ by motion to quash on the ground the writ and the amended motion therefor, mentioned in the writ, did not require the relief sought. The motion was by the parties and the court treated as a demurrer under the authority of *Citizens Utilities Co. v. City of Goodland*, 146 Kan. 172, 69 P. 2d 318.

Omitting all formal portions of the amended motion for the writ the motion, in substance, alleged: Plaintiff is the owner of the retail business at 230 North Harrison street in the city of Lindsborg, known as the Step-Inn-Lunch, where she lawfully sells cereal malt beverages to the public pursuant to a license formerly issued by the city under its ordinance; the city had issued such a license to her for the years 1938 to 1947, inclusive, and during those years she operated the place lawfully and without objection or complaint; her husband is the manager thereof and is qualified therefor under the law; plaintiff and her husband are citizens of the United States, both are seventy years of age, of good character and reputation and have been residents of McPherson county for forty and forty-two years, respectively; the attached application for a license was properly signed in the form required by the city ordinance and was accompanied with a fee in the sum of $50.

The amended motion for the writ further alleged:

"That at the regular meeting of the City Council of the City of Lindsborg held on the 1st day of December, 1947, and on the 5th day of January, 1948, respectively, at each of which meetings a quorum was present and at both of which meetings the application of the plaintiff was presented for consideration and approval, the said governing body of the City of Lindsborg unlawfully failed, neglected and refused to issue a license to the plaintiff permitting her to sell cereal malt beverages at retail as provided by the city ordinances of the City of Lindsborg and the statutes of the State of Kansas relating thereto.

"That said failure, neglect and refusal to issue said license to plaintiff was unlawful in that no objection to the form of plaintiff's application for license or to the execution and verification thereof was stated or discussed by the members of said Council at said meetings; in that no question was raised by the members of said Council at said meetings as to the truth of the statements

made by plaintiff in said application for license; in that no objection to plaintiff's qualifications to receive said license was stated or discussed by said Council at said meetings; in that no reason or cause for refusing to issue said license to plaintiff was stated or discussed at said meetings by said Council; that no reason or explanation of the said Council's refusal, failure and neglect to issue plaintiff said license was given plaintiff; that said Council had and has no valid objection to the issuance of such license to plaintiff, and that by reason of the premises, the refusal, failure and neglect of said Council to issue said license to plaintiff was done arbitrarily, capriciously and oppressively.

"That the unlawful failure, refusal and neglect of said City Council to issue said license to plaintiff has resulted in unlawful and unreasonable discrimination against this plaintiff, since said City Council did on about the 1st day of December, 1947, issue to the American Legion Home of Lindsborg, Kansas, a license permitting the sale of cereal malt beverages during the year 1948, which license remains in full force and effect, and that the said American Legion Home of Lindsborg, Kansas, is now engaged in the sale of cereal malt beverages under said license.

"That on said dates of December 1, 1947, and January 5, 1948, said Council unlawfully refused, failed and neglected to issue such license to plaintiff, and that since said dates said Council has continued and still continues to refuse to issue said license to this plaintiff.

"That under the city ordinances of the City of Lindsborg and under the laws of the State of Kansas in such cases made and provided, it was and is the obligation and the duty of the governing body of the City of Lindsborg to issue to the plaintiff a license permitting said plaintiff to sell at retail cereal malt beverages as such term is defined by the city ordinance of the City of Lindsborg and the statutes of the State of Kansas, and that by reason of the refusal and neglect of said governing body to issue to the plaintiff such a license, the plaintiff has been required to close her place of business, and as a result thereof, has been denied the privilege of operating her place of business and has suffered damages and lost profits ordinarily realized from the operation of said business.

"That the plaintiff has no adequate, plain and complete remedy at law in the premises, and as a matter of right is entitled to the license applied for, and will suffer irreparable damage and injury if the court does not make an order directing the City Council of the City of Lindsborg, the same being the governing body of the City of Lindsborg, to issue a license to the plaintiff permitting the said plaintiff to sell at retail cereal malt beverages at her place of business above described."

The law involved is an act regulating the sale of cereal malt beverages, Laws 1937, ch. 214, §§ 1 to 10, inclusive. (G. S. 1947 Supp. 21-2701 to 21-2710, incl.) We shall refer to pertinent sections of the law by number.

Section 1 defines the terms employed in the act. Section 2 states the application for a license is to be verified and is to be upon a form prepared by the attorney general of the state and provides

what information it shall contain. Section 2 also contains the following provision:

"The board of county commissioners of the several counties or the governing body of a city *shall have the right to issue a license* upon application duly made as otherwise provided for herein. . . ." (Our italics.)

Section 3 provides:

"After examination of the application, the board of county commissioners, the governing body of the city, or the department of inspections and registration, shall, *if they approve the same,* issue a license to the applicant." (Our italics.)

Section 3 then states to what persons a license shall not be issued. Section 4, among other things, provides for regulation of hours of closing, standards of conduct, rules and regulations concerning morals, sanitary and health conditions of places licensed and that zones may be established within which such a business may not be operated. Section 5a provides for injunction proceedings which may be instituted to enjoin the operation of such a business for violation of rules and regulations prescribed under the act. It also provides such injunction proceedings shall be the same as now prescribed for enjoining intoxicating liquor nuisances. Section 6 provides for revocation of licenses for reasons stated therein and for appeals to the district court in the event of revocation.

We shall refer to appellant as the applicant and to appellees as the city.

The city does not contend the application for a license was inadequate in form or failed to supply the required information or that the facts stated therein disqualified petitioner *as an applicant* for a license. The city, however, contends an application which merely contains the information required by section 2, and which discloses he is not a disqualified applicant under section 3, does not compel the issuance of a license. The city, in substance, reasons the legislature intended if the application discloses the applicant is one who is completely disqualified to obtain a license under section 3 then the city is compelled to deny the application. It further reasons that if the application is by one who can qualify *as an applicant* the city may then exercise its discretion in determining whether it will approve the application.

On the other hand the applicant, in substance, asserts that if an application contains the facts required by section 2, and it shows he is not a person who is disqualified by section 3, and the location

of the business is not in a prohibited zone the applicant is entitled to a license as a matter of right and the city is compelled to issue it. In support of this contention petitioner cites *Weber Engine Co. v. Alter,* 120 Kan. 557, 245 Pac. 143, 46 A. L. R. 158; *Tresner v. Rees,* 154 Kan. 581, 119 P. 2d 511. Without taking the time to otherwise discuss these cases it is sufficient to say they are not decisions interpreting the act in question and do not involve police regulations. Nor are the powers of officers under the statutes there involved the same as the powers of the city under the act now before us.

That the instant act is a valid regulatory police measure has been definitely determined notwithstanding the fact the legislature declared 3.2 beer to be nonintoxicating. (*Johnson v. Reno County Comm'rs,* 147 Kan. 211, 216, 75 P. 2d 849.)

The city emphasizes that this is a mandamus action and that G. S. 1935, 60-1701 grants courts the right to issue writs of mandamus only "to compel the performance of any act which the law *specially enjoins as a duty* resulting from an office, trust or station" and contends the malt beverage act does not specially impose the duty on the city to issue a license. The applicant contends this court has held its conception of the proper use of mandamus to expedite the official business of the state has expanded far beyond the ancient limitation of matters justiciable in mandamus and that the use of mandamus for the speedy settlement of questions of law for the guidance of state officials and official boards in the discharge of their duty is common in this state, citing *State, ex rel., v. State Highway Comm.,* 132 Kan. 327, 334, 295 Pac. 986; *Kittredge v. Boyd,* 136 Kan. 691, 18 P. 2d 563; *State, ex rel., v. Peterson,* 147 Kan. 626, 631, 78 P. 2d 60.

Assuming mandamus is a proper remedy the city stresses the following language contained in section 3, to wit:

"After examination of the application, the board of county commissioners, the governing body of the city, or the department of inspections and registration, shall, *if they approve the same,* issue a license to the applicant."

The city contends this language discloses the legislature intended governing boards should have the right to exercise their discretion relative to the issuance of a license where the application is in proper form. We previously also directed attention to the language employed in section 2, the application statute, that the city *"shall have the right* to issue a license upon application duly made as otherwise provided for herein. . . ." (Our italics.)

These various provisions indicate a city is not compelled to issue a license merely because an application contains the necessary information to qualify a person as an applicant for a license. In other words, an applicant is not entitled to a license as a matter of right and the city therefore is not under a duty to issue it merely because a proper application is filed therefor. (*Johnson v. Reno County Comm'rs*, supra, p. 219.)

The applicant next insists if the city has discretion in the matter, it cannot be arbitrarily and capriciously exercised but must be reasonably exercised, citing *Johnson v. Reno County Comm'rs*, supra. In the Johnson case it was not alleged the township board arbitrarily or in bad faith objected to the issuance of a license. The constitutionality of the act was involved and it was contended the act was unconstitutional for the reason it made possible arbitrary and capricious action by a governing body. We held that in order to render the act unobjectionable on constitutional grounds it was necessary the discretion, in order to constitute an honest discharge of official duty, should be reasonably exercised and should not represent merely a personal will, prejudice or caprice.

Before considering allegations of the motion for the writ touching the subject of alleged arbitrary action we pause to observe the precise nature of the relief sought in the instant case. The applicant seeks to compel the issuance of a license by the remedy of mandamus. The law requires the issuance of a license only after the city has approved the application therefor. The application has not been approved. It would therefore appear the action to compel the issuance of the writ is premature. The general theory of the motion for the writ seems to be that the city denied the application without considering it. If that were true the proper remedy would be to compel the city to consider the application and not to compel the city to issue the license. We therefore find no error which the trial court committed in refusing the relief sought.

The mere affirmance of the judgment, however, would probably result only in further litigation. In view of the circumstances we have concluded to briefly consider the motion in order to clarify a few basic principles. At the outset a fundamental principle must be recognized. It is that the applicant did not have the *right* which she attempted to compel the city to recognize. All she had was the right to ask the city to grant her a privilege. The mere fact a privi-

lege under a police measure is granted to one person does not create a right in another or compel the city to issue the same privilege to another. A mere privilege under the act may be granted to one and denied to another. (*Johnson v. Reno County Comm'rs,* supra, pp. 219, 224.)

In determining whether a city will issue a license many factors may be taken into account. We need not attempt to enumerate them. It is the business of the council, in the first instance, to determine what factors they deem to be important. There were nine members on this governing body. Certain factors might be persuasive to some and conclusive to others. Entirely different factors might prompt the decision of each councilman and yet all might agree not to approve the application for a license. Here, insofar as the record discloses, all the councilmen disapproved the application. That, however, is immaterial so long as a majority disapproved it. The fact the application was denied is itself evidence the council acted on the application. The statute does not require the council, or any of its members, to discuss with the applicant the reasons for denying the application or to state their reasons for doing so. The decision rests in the exercise of the council's discretion. In order to allege a violation of such discretion it would seem necessary that the motion for a writ of mandamus, and later proof thereof, should negative the existence of every ground for the refusal of a license that might be regarded as reasonable by the councilmen or to allege facts which affirmatively disclose arbitrary or capricious action. Barring conclusions the motion for the writ does not do that. A demurrer does not admit conclusions of the pleader but only facts well pleaded. (*Richards v. Tiernan,* 150 Kan. 116, 91 P. 2d 22; *Tillotson v. Fair,* 160 Kan. 81, 159 P. 2d 471.) For example, the allegation that the council ". . . had and has no valid objection to the issuance of such license to plaintiff" is in reality a conclusion of the pleader in that it attempts to substitute the pleader's views of what are not valid objections for those of the council.

Without unduly extending the opinion it is well to remember the city council may have concluded that in the very nature of this particular business or by reason of attendant circumstances it was, or might become, subversive to the morals, health or general welfare of the citizens of that community. If the council so believed it was justified in denying the license. (*Johnson v. Reno County Comm'rs,*

supra, p. 220.) How then can the naked allegation that the council had no valid objection to the issuance of a license constitute anything but a conclusion?

It may also be well to observe the motion for the writ does not allege the city was at the time issuing a license, or licenses, to others for the *public sale* of malt beverages. The council might, with some basis in reason, be willing to issue a license to some club or organization such as the American Legion for its own use and yet believe it was not wise to issue it for general public purposes.

As in many other cases a governing body may not always exercise its discretion with the wisdom and justice to the parties affected that might be desired. The legislature, however, assigned the responsibility for making the instant decision to the governing body of the city. If the exercise of its judgment is faulty there is, of course, always final redress in the future election of its members. In the meantime no constitutional right has been denied. (*Johnson v. Reno County Comm'rs*, supra, p. 222.) The applicant argues such a decision will result in local option. If that be true it is the concern of the legislature and not of the courts.

The judgment is affirmed.