No. 50,747

THE CITY OF BAXTER SPRINGS, KANSAS, *Appellant,* v. HARRY L. BRYANT, *Appellee.*

(598 P.2d 1051)

Opinion filed August 9, 1979.

*Mark L. Bennett, Jr.*, of Topeka, argued the cause, and *Merle Duncan, Jr.*, of Baxter Springs, was with him on the brief for the appellant.

*David F. Brewster*, of Baxter Springs, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

MILLER, J.: The City of Baxter Springs appeals from an order of the Cherokee District Court declaring two sections of a Baxter Springs ordinance unconstitutional, and dismissing six complaints charging the defendant, Harry L. Bryant, with violations of that ordinance. We are asked to review the trial court's ruling.

Bryant is the proprietor of an establishment known as the Sugar Bear Disco, which he has operated within the corporate limits of Baxter Springs since 1975. A "disco," or more properly a discotheque, is, we are informed, a commercial enterprise where people gather to listen and dance to recorded music (formerly recorded on records or "discs" but now frequently recorded on tapes) and to partake of food and other refreshment. During his ownership and operation of the Sugar Bear Disco, Bryant was the holder of a cereal malt beverage license issued by the City, and he sold beer having an alcohol content of not more than 3.2 per cent to his patrons. So far as we are informed, the first few years passed without incident.

Then in September of 1978, Bryant was charged in separate complaints filed in the municipal court of Baxter Springs with four separate violations of § 8(d) and two separate violations of § 8(c) of Ordinance No. 140. Upon trial in municipal court, he was convicted of "dispensing beer and allowing dancing and not having an unobstructed view of his premises from the street." He was fined $50 on each of the six charges.

Bryant appealed to the district court; there he filed a motion to dismiss, claiming that the ordinance denies defendant equal protection of the law, is unreasonable, arbitrary and oppressive, is overbroad in its language, and for those reasons is unconstitutional.

The ordinance, entitled BEER ORDINANCE NO. 140, was adopted by the governing body of Baxter Springs on April 27, 1937. The sections in issue read as follows:

"(c) It shall be unlawful for any licensee to sell, dispense or deliver malt beverages under said license in any room or rooms having curtains, screens or other obstructions over or across the windows of said rooms or in said rooms which shall prevent an unobstructed view from the street of the interior of the premises covered by such license.

"(d) It shall be unlawful for any licensee to suffer, permit or allow any dancing upon the premises covered by said permit or in the rooms or premises adjacent thereto, where malt beverages are sold under said license if said rooms or premises adjacent thereto are owned or under control of said licensee."

The motion to dismiss was argued and briefs were submitted by counsel. The district court, on October 31, 1978, sustained the motion, held both sections of the ordinance unconstitutional, and dismissed the complaints. The court said:

"(9) That Sections 8(c) and 8(d) of Ordinance No. 140 of the City of Baxter Springs, Kansas, are unconstitutional in that said ordinance sets forth an unreasonable, arbitrary classification of persons, specifically in that said ordinance prohibits conduct in and sets forth requirements applying to places with licenses for businesses selling cereal malt beverages, but does not prohibit such conduct or set such requirements in such clubs as may be licensed under the Kansas Intoxicating Liquor Law as set forth in K.S.A. 41-2601 through K.S.A. 41-2635.

"(10) That the prohibitions and requirements set forth in said Sections 8(c) and 8(d) are not reasonable and are not a proper exercise of the police power of municipalities, in that said Sections 8(c) and 8(d) do not bear a real and substantial relationship to the public health, safety, morals or general welfare, and that they are unreasonable and arbitrary in that the plaintiff City can give no basis or relationship to the protection of the general welfare of the public.

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that the motion to dismiss filed herein by the defendant is sustained, and that the convictions of the defendant in the Municipal Court of Baxter Springs, Kansas, are hereby set aside and held for naught, and that the charges filed against the defendant herein are hereby set aside and dismissed."

The City appeals, contending that the trial court erred in sustaining the motion to dismiss and in holding the two sections of the ordinance unconstitutional.

Before we consider the specific challenges to the ordinance before us, we should review some of the guidelines which come into play when a court is called upon to determine the constitutionality of a statute or ordinance.

"The constitutionality of a statute is presumed, all doubts must be resolved in favor of its validity, and before the statute may be stricken down, it must clearly appear the statute violates the constitution. [Citations omitted.]

"In determining constitutionality, it is the court's duty to uphold a statute under attack rather than defeat it and if there is any reasonable way to construe the statute as constitutionally valid, that should be done. [Citations omitted.]

"Statutes are not stricken down unless the infringement of the superior law is clear beyond substantial doubt. [Citations omitted.]

. . . .

"The propriety, wisdom, necessity and expedience of legislation are exclusively matters for legislative determination and courts will not invalidate laws, otherwise constitutional, because the members of the court do not consider the statute in the public interest of the state, since, necessarily, what the views of members of the court may be upon the subject is wholly immaterial and it is not the province nor the right of courts to determine the wisdom of legislation touching the public interest as that is a legislative function with which courts cannot interfere. [Citations omitted.]" *State ex rel. Schneider v. Kennedy,* 225 Kan. 13, 20-21, 587 P.2d 844 (1978).

The general rule for reviewing statutes or ordinances enacted pursuant to the police power is stated in *City of Wichita v. White,* 205 Kan. 408, 469 P.2d 287 (1970), as follows:

"In reviewing statutes such as these, the court begins with the proposition that all presumptions are in favor of their validity. (*State, ex rel., v. Fairmont Foods Co.,* 196 Kan. 73, 77, 410 P.2d 308; and *Tilley v. Keller Truck & Implement Corp.,* 200 Kan. 641, 438 P.2d 128.) The court does not sit in judgment on the merits of such legislation. If the statute here challenged does not contravene significant constitutional or inherent rights of individuals, if the classification on which it is based is reasonable, if it is within the scope of the police powers of the state, if it is appropriately related to a proper purpose of such police power, the statute is not to be invalidated by the judicial arm of government." (p. 409.)

In *State, ex rel., v. Fairmont Foods Co.,* 196 Kan. 73, 76-77, 410 P.2d 308 (1966), we said:

"Once a subject is found to be within the scope of the state's police power, the only limitations upon the exercise of such power are that the regulations must have reference in fact to the welfare of society and must be fairly designed to protect the public against the evils which might otherwise occur. Within these limits the legislature is the sole judge of the nature and extent of the measures necessary to accomplish its purpose. [Citations omitted.]

. . . .

"The reasonableness of restrictions imposed by the legislature by the exercise of the police power is a judicial matter, and all presumptions are in favor of constitutionality of the act. Within the zone of doubt and fair debate legislation is conclusive upon the court and must be upheld. [Citations omitted.]"

Historically, the sale of intoxicating liquor was prohibited in Kansas by constitutional mandate from 1880 until 1948. Kan. Const. art. 15, § 10. Possession of any spirituous, malt, vinous, fermented or other intoxicating liquors was proscribed by statute, G.S. 1935, 21-2101, and all such liquids were included within the statutory definition of intoxicating liquor. G.S. 1935, 21-2109. A

new definition was proclaimed in 1937 when the latter statute was amended. Thereafter all beverages which contain more than three and two-tenths of alcohol by weight were "intoxicating liquor"; beverages containing that amount or less of alcohol were not. L. 1937, ch. 213, §§ 1 and 2. At the same legislative session, laws regulating the sale of cereal malt beverages were enacted, and the licensed sale of such beverages was authorized. L. 1937, ch. 214. These laws, since amended, now appear within chapter 41, art. 27 of the Kansas Statutes Annotated.

The licensing of retail cereal malt beverage outlets (except on railways) is delegated to local units of government; to cities, when the place of business is located within the city limits. K.S.A. 1978 Supp. 41-2702. A measure of local regulation is authorized by K.S.A. 41-2704 which provides in applicable part that:

"[T]he governing body of any city may prescribe hours of closing, standards of conduct, and rules and regulations concerning the moral, sanitary and health conditions of the places licensed and may establish zones within which no place of business may be located not inconsistent with the provisions of this act: *Provided,* That no cereal malt beverages may be sold between the hours of twelve midnight and six a.m. or on Sunday or on the day of any national, state, county or city elections, including primary elections, during the hours the polls are open, within the political area in which such election is being held. No private rooms or closed booths shall be operated in said place of business, but this provision shall not apply if the licensed premises are also currently licensed as a club under a license issued by the state director of alcoholic beverage control. Said place of business shall be open to the public and to the police at all times during business hours, except that a premises licensed as a club under a license issued by the state director of alcoholic beverage control shall be open to the police and not to the public. No person under eighteen (18) years of age shall be permitted to buy or drink any of such beverages in or about said place of business."

The first case involving the cereal malt beverage law to reach this court was *Johnson v. Reno County Comm'rs,* 147 Kan. 211, 75 P.2d 849 (1938). There the act was attacked on a number of constitutional grounds. Our primary holding was that the delegation of the regulatory and licensing authority to local units of government was constitutional. Important to our consideration here is the court's discussion of the police power in cereal malt beverage regulation. Speaking for a unanimous court, Justice Wedell said:

"Irrespective of what the legislative body said concerning the nonintoxicating character of the beverage in question, that same body, in no uncertain terms and in the same legislative session and in the following chapter, by express mandate

declared the sale of the beverage should be regulated. It is not the province of a court to nullify that clear declaration of legislative will if the regulatory measure is otherwise a valid exercise of police power. Having the police power to forbid the sale of such an article entirely, it, of course, had the power to regulate its sale. (*State v. Nossaman,* 107 Kan. 715, 193 Pac. 347; *Little v. Smith,* 124 Kan. 237, 239, 257 Pac. 959.) Having the power to regulate the sale, it had the authority to determine how, in its judgment, the desired regulation could be most effectively accomplished. In the early case of *State v. Durein,* 70 Kan. 13, 80 Pac. 987, the rule was stated thus:

" 'Power to legislate for the health, morals, peace and good order of society being conceded to the legislature, that body must determine the limits of its exercise, subject only to the condition that the measures adopted be reasonably appropriate to effect its purposes, and upon this question the court will rarely substitute its judgment for that of the legislature.' (p. 32.)

"It must be assumed the legislature fully recognized the well-known fact that all too frequently rural communities are inefficiently and inadequately policed, and hence that in such communities the sale of the beverage might well become or tend to become the source of evils which it was determined to prevent. It therefore saw fit to delegate to the township board the discretion of determining whether in such governmental subdivisions the sale of the beverage, in its sound judgment, should be permitted." (pp. 216-217.)

Later cases have been concerned for the most part with licensing and not with regulation, and are not helpful here. *Lindquist v. City of Lindsborg,* 165 Kan. 212, 193 P.2d 180 (1948); *Horyna v. Board of County Commissioners,* 194 Kan. 445, 399 P.2d 844 (1965); *Curless v. Board of County Commissioners,* 197 Kan. 580, 419 P.2d 876 (1966). In *Tri-State Hotel Co. v. Londerholm,* 195 Kan. 748, 408 P.2d 877 (1965), where we upheld the private club act, L. 1965, ch. 316, we said: "[T]he subject of alcoholic liquor in all its forms may be regulated by the legislature through the exercise of the police power of the state in determining its policy that the general welfare, health and safety of persons and property should be protected." (195 Kan. at 754.)

I.

Is § 8(d) of the ordinance, which makes it unlawful for any licensee to "suffer, permit or allow any dancing" upon the licensed premises, void as being an unreasonable, arbitrary and capricious exercise of the police power? Violation of this section is a criminal offense, punishable by fine and imprisonment; conviction of a licensee is grounds for the revocation of license.

The City acknowledges that "it cannot limit or prohibit dancing per se and that any attempt to do so would be a denial of due process and equal protection, as guaranteed by the Fourteenth

Amendment to the United States Constitution." True, the ordinance does not say that the *patrons* of the licensee cannot dance, and it does not subject the *patrons* to criminal penalties if they dance. Instead, the ordinance shifts the burden to the *licensee* to make and enforce a no-dancing rule for the licensed premises under penalty of the law. The ordinance thus prohibits dancing as effectively as if it provided that any person dancing in any establishment licensed to sell cereal malt beverages would be guilty of an offense punishable by fine and imprisonment. What the City cannot do directly it cannot do indirectly.

Is public dancing inimical to the morals, the sanitation, the health, or the general welfare of the residents of Baxter Springs? We think not. Dancing requires physical exertion; it is healthful exercise which in our physical-fitness-conscious society has wide acceptance. In *Bruner v. City of Danville,* 394 S.W.2d 939 (Ky. App. 1965) the court found that the City's refusal to issue a license to hold public dances was an invalid exercise of police power. The court said:

"[T]here have always been certain kinds of activity which, though not harmful or offensive per se, can be not only regulated under the police power but, because of their 'potential evil consequences,' prohibited altogether . . . . [C]ities . . . could prohibit the operation of pool rooms. Public dance halls traditionally have been relegated to the same unenviable limbo, along with 'traffic in intoxicating liquor, * * * pawnbroking, carnivals and shows.' . . . But we are of the opinion that the time has come when a more realistic view must prevail. In a city of the size and importance of Danville, where private and semi-private dances are an established motif in the pattern of normal social life, to outlaw public dances completely would be unreasonable. They may be prohibited in certain areas, such as residential zones, and subjected to precautionary conditions, provided that such territorial and other restrictions and requirements are reasonable and are set forth with substantial precision in the ordinance, but beyond that the police power becomes indistinguishable from the police state." (pp. 943-944.)

Healthful and harmless recreation cannot be *prohibited* by a municipal corporation. (Emphasis supplied.) 62 C.J.S., Municipal Corporations § 211.

We are not unmindful of the cases which have held that the power of a state or municipality to regulate taverns, bars, nightclubs, and other places where alcoholic beverages are dispensed, includes the power to ban certain types of activity. The leading case in this area is *California v. LaRue,* 409 U.S. 109, 34 L.Ed.2d 342, 93 S.Ct. 390 (1972). The state liquor control authority had

promulgated regulations prohibiting certain sexually explicit live entertainment, including nude, bottomless or topless dancers, or films thereof, from licensed bars and clubs. The Supreme Court held that under the state's broad authority to control intoxicating liquors under the Twenty-first Amendment, the regulations did not, on their face, violate the United States Constitution, and that the regulations had a rational relationship to the purpose, the protection of the general welfare of the community. In answer to argument that the entertainment was "communicative" and thus partook of First Amendment protection, the court said:

"Our prior cases have held that both motion pictures and theatrical productions are within the protection of the First and Fourteenth Amendments. . . .

. . . .

"But as the mode of expression moves from the printed page to the commission of public acts that may themselves violate valid penal statutes, the scope of permissible state regulations significantly increases. States may sometimes proscribe expression that is directed to the accomplishment of an end that the State has declared to be illegal when such expression consists, in part, of 'conduct' or 'action,' . . . .

. . . .

"The substance of the regulations . . . prohibits licensed bars or night-clubs from displaying, either in the form of movies or live entertainment, 'performances' that partake more of gross sexuality than of communication. While we agree that at least some of the performances to which these regulations address themselves are within the limits of the constitutional protection of freedom of expression, the critical fact is that California has not forbidden these performances across the board. It has merely proscribed such performances in establishments that it licenses to sell liquor by the drink.

. . . .

"The Department's conclusion, embodied in these regulations, that certain sexual performances and the dispensation of liquor by the drink ought not to occur at premises that have licenses was not an irrational one. Given the added presumption in favor of the validity of the state regulation in this area that the Twenty-first Amendment requires, we cannot hold that the regulations on their face violate the Federal Constitution." (pp. 116-118.)

The court later clarified the relative importance of the Twenty-first Amendment and that of other amendments in *Craig v. Boren,* 429 U.S. 190, 50 L.Ed.2d 397, 97 S.Ct. 451 (1976), where it said:

"It is true that *California v. LaRue,* 409 U.S. 109, 115 (1972), relied upon the Twenty-first Amendment to 'strengthen' the State's authority to regulate live entertainment at establishments licensed to dispense liquor, at least when the performances 'partake more of gross sexuality than of communication,' *id.,* at 118. Nevertheless, the Court has never recognized sufficient 'strength' in the Amendment to defeat an otherwise established claim of invidious discrimination in

violation of the Equal Protection Clause. Rather, *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 178-179 (1972), establishes that state liquor regulatory schemes cannot work invidious discriminations that violate the Equal Protection Clause." (pp. 207-208.)

Thus state or local regulation in the field of alcoholic beverages must not be discriminatory and must not conflict with other provisions of the Constitution.

*LaRue,* as we have seen, dealt with nudity and grossly sexual exhibitions; that some entertainers were "dancers" was of little import to the decision. There is no claim by the City in the case before us that the "dancing" in the Sugar Bear Disco is nude, obscene, or sexually explicit, or that it is other than rhythmic movements of fully clothed patrons for their own enjoyment.

The City argues that it has the right to prohibit dancing in order to make the establishment less attractive to prospective patrons, and thus fewer sales of alcoholic beverages will be made, there will be less consumption, and the health, safety, morals and general welfare of the community will be enhanced. Some cases, cited by appellant, support this claim.

How far may a municipality go in lessening, by regulation, the attractiveness of the licensed premises? May it ban air conditioning in the summer and heat in the winter? May it ban ventilating fans? May it ban refrigeration of the products sold? May it limit freedom of speech or expression in such establishments? May it prohibit the proprietor from providing tables or chairs for the use of patrons? Surely all of these bans would make the premises less attractive and less enticing to the public; but such regulations would be wholly unreasonable. Regulations must bear a rational relationship to public health, safety, sanitation, morals, or the general welfare of the community, and they may not be discriminatory and may not encroach on the constitutional rights of the persons affected. A legislative body cannot, under the guise of the police power, enact unequal, unreasonable, and oppressive legislation, or that which is in violation of the fundamental law. *Gilbert v. Mathews,* 186 Kan. 672, 677, 352 P.2d 58 (1960).

We take judicial notice of the Kansas Private Club Act, K.S.A. 41-2601 *et seq.,* as amended, and the regulations pertaining thereto, promulgated by the Department of Revenue, Division of Alcoholic Beverage Control, K.A.R. 14-18-1 *et seq.,* and K.A.R. 14-19-1 *et seq.* In none of these statutes or regulations do we find

prohibitions against or restrictions on dancing on club premises. Thus members of private clubs throughout this state, in the clubs in which they hold membership and in clubs which are parties to reciprocal agreements with those clubs (K.A.R. 14-19-10), may consume beverages having an alcohol content many times that of cereal malt beverages, and they may dance if they wish. We cannot but acknowledge the large number of such clubs extant in the state.

Yet persons who are not members of such clubs, perhaps because of economic necessity, and who patronize licensed cereal malt beverage establishments instead of private clubs for recreation, are denied the privilege of dancing in the City of Baxter Springs. Such regulation discriminates against a sizeable segment of our citizenry and deprives them of First Amendment rights. Will the ban on dancing tend to decrease intoxication? Appellant contends that fewer persons will patronize the licensed premises and thus there will be less intoxication and fewer incidents requiring the attention of the police if dancing is prohibited. But if those persons who do patronize the establishment are not permitted to dance, and must therefore refrain from that exercise while sitting and consuming cereal malt beverages, will less intoxication result? No statistics have been provided to support either contention. We cannot say on the record before us that the result of the ban will be to lessen intoxication, or that the ban will thus promote the general welfare of the community.

We conclude that § 8(d) of the ordinance, which in effect prohibits dancing in licensed cereal malt beverage establishments, is not reasonably calculated to promote the health, sanitation, morals, or general welfare of the residents of Baxter Springs; that it discriminates against the patrons of those establishments; and that the trial court did not err in holding § 8(d) of the Baxter Springs Beer Ordinance No. 140 unconstitutional.

## II.

We now turn to § 8(c) of the ordinance, which makes it unlawful for a licensee to sell malt beverages "in any room or rooms having curtains, screens or other obstructions over or across the windows of said rooms or in said rooms which shall prevent an unobstructed view from the street of the interior of the premises . . . ."

This section of the ordinance does not require windows of any

certain size or location; in fact it does not require that there be any windows at all; if there are windows, however, the licensee must not hang curtains, install screens, or place other obstructions over the windows which block the view of the interior through any such windows.

Is this section unconstitutionally vague? The test to determine whether a criminal statute or ordinance is vague and indefinite is whether its language conveys "a sufficiently definite warning as to the conduct proscribed when measured by common understanding and practice." *City of Altamont v. Finkle,* 224 Kan. 221, 223, 579 P.2d 712 (1979); *State v. Kirby,* 222 Kan. 1, Syl. ¶ 1, 563 P.2d 408 (1977). The statutory language is comprehensible and the actions prohibited are clearly discernible, as we have pointed out above. We do not find § 8(c) vague or indefinite.

Is this section within the scope of the City's police power, is it reasonable, and is it logically connected with the objectives? K.S.A. 41-2704 authorizes the cities to adopt rules and regulations concerning the "moral, sanitary and health conditions" of places licensed to sell cereal malt beverages. In *Blue Star Supper Club, Inc. v. City of Wichita,* 208 Kan. 731, 735, 495 P.2d 524 (1972), we said:

"The regulation of an occupation, trade or business is widely held to be a legitimate exercise of the police power, where the unrestricted pursuit of the same might adversely affect the public health, safety, morals or general welfare. This principle presupposes that the regulation is reasonable, is not arbitrary, and that it bears a logical connection with the objectives to be accomplished."

Similar ordinances, forbidding the erection or maintenance, in any place where intoxicating liquor was sold, of door or window screens, window blinds, stained glass, or any obstruction over doors or windows that would prevent a full view of the interior, were attacked as unreasonable in *Champer v. The City of Greencastle,* 138 Ind. 339, 35 N.E. 14 (1893) and *Steffy v. The Town of Monroe City,* 135 Ind. 466, 35 N.E. 121 (1893). The Greencastle ordinance contained a preamble, reciting that the object of the ordinance was to provide better policing of the premises, and aid in the detection of crime. The Indiana Supreme Court said:

"[T]he validity of the ordinance depends upon whether it is a reasonable exercise of the power conferred or not. . . .

"Under this ordinance, if valid, it would make the use of the ordinary door screen or window shutters, window screens and window curtains to the doors or windows of a saloon unlawful, and it would likewise make it unlawful to

maintain stained, ground, colored or darkened glass of any kind to any of such doors or windows.

"We know of our own knowledge, common alike to all, that the use of door screens, window screens, window shutters, window curtains and blinds, ground, darkened and colored glass used in and to doors and windows are among the comforts and conveniences of civilized life. They are used in other business houses than saloons, in private residences, in public buildings and offices, in hotels and dining halls, in depots, in court houses, and in churches. Indeed, it may be said that they are necessary comforts and conveniences of civilized life, almost as much so as houses are to live in and to do business in. The protection of the occupants of such houses and places against the fierce rays of the sun in the proper use of such houses and places may be almost, if not quite, as necessary to protection against the storm and the rain, and the inclemency of the weather generally. It may be admitted that the evils arising from the sale of intoxicants have been so great that it has become the settled policy of the State, from the earliest times, to place and keep the traffic under stringent restrictions by the statutes of the State, and that these evils are often increased by violations of these statutory restrictions by licensed dealers. But we can not concur in the contention of appellee's counsel that the saloon 'business is an illegitimate one, and that in order to make large profits therein it is necessary to constantly violate the law.' The business is one that any one could lawfully engage in, in the absence of any statute on the subject, and the statutes of the State, which, from time to time, have imposed restrictions and burdens upon the traffic, do not proceed upon the idea that the business is illegitimate, and seek to legalize an illegitimate business, but proceed upon the idea that the business is legitimate, and, owing to the evils arising from it, seek to place it under restrictions and burdens so as to lessen those evils.

"Be this as it may, there is no reason in saying that because some saloon keepers violate the law all shall be deprived of the use of the necessary comforts and conveniences of civilized life in their business. If the corporation can make it unlawful for them to use screens to exclude flies and insects, they may make it unlawful for them to use shutters to their doors to exclude the cold, the storm, and the rain; if it can make it unlawful for them to use window shutters and window blinds and curtains, colored, stained, and ground glass in doors and windows of their saloons, under the pretense of permitting an unobstructed view into the interior of their saloons, the better to detect violations of the liquor law, then there is no reason why they can not be compelled to make the whole front of their saloons of solid glass, without any wood or any other material. Indeed, if the corporation has the power to make the ordinance here in question, for the reasons given in the preamble thereto, then it necessarily has the power by ordinance to compel them to open the whole front of their saloons, from one side to the other, without even the poor privilege of putting solid glass in as a protection against storm, rain, and the inclemency of the weather, and against theft and robbery.

.  .  .  .

"The judgment is reversed, the cause remanded, with instructions to sustain the demurrer to the complaint." (pp. 351-354.)

The ordinance before us would bar screens, drapes, curtains and shades. It would not contribute to the health, welfare, safety

or comfort of the occupants. Law enforcement officers are permitted by K.S.A. 41-2704 to enter the place of business at any time during business hours, so that they do not need an exterior view. Private rooms or closed booths are prohibited by the same statute, so that upon entering, officers may view the entirety of the premises.

As the *Steffy* court observed,

"The more obvious purpose of the ordinance was to expose to the view of the public those persons of the town who might visit the saloons and drink intoxicants therein, and by reason of such exposure deter them from such visits, thereby not only restraining such patrons in their desires for intoxicants, but in the same proportion curtailing the business of the saloon-keeper." 135 Ind. at 470.

Such is obviously the primary purpose of § 8(c) of the ordinance before us. The section has no real and substantial relationship to the moral, sanitary or health conditions of the licensed premises, and it would not promote the general welfare of the public any more than would an ordinance making the same requirement of other business establishments so that officers might detect burglaries, robberies, or other offenses.

We have not overlooked the cases cited by appellant, but find them unpersuasive and distinguishable. The statute upheld in *Pride Club, Inc. v. State,* 25 Utah 2d 333, 481 P.2d 669 (1971) merely required the premises to be unbarricaded, and open to inspection by peace officers. *Dauenhauer v. City of Gretna,* 93 So. 2d 27 (La. App. 1956) was an appeal from a revocation of a liquor license for violation of statutes, one of which required that the premises be open to view through the outside door. The statute was not challenged in that proceeding. *People v. Ballas,* 344 Ill. App. 644, 101 N.E.2d 844 (1951) is a published headnote only; there is no indication that the Illinois statute there involved was challenged, or that its constitutionality was determined in that proceeding. The statute has since been repealed.

We conclude that the trial court did not err in holding § 8(c) invalid. The judgment is affirmed.

FROMME and MCFARLAND, JJ., concur in the result.