Lawrence CABAIS, et al., Plaintiffs,

v.

Roscoe EGGER, Commissioner of the Internal Revenue Service, et al., Defendants.

INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURE IMPLEMENT WORKERS OF AMERICA, UAW, et al., Plaintiffs,

v.

Roscoe EGGER, Commissioner of the Internal Revenue Service, et al., Defendants.

Civ. A. Nos. 80–2470, 80–2580.

United States District Court, District of Columbia.

Aug. 27, 1981.

Jonathan A. Weiss, New York City, Edward C. King, Washington, D. C., for plaintiff Cabais.

Wendy L. Kahn, Zwerdling, Schlossberg, Leibig & Kahn, Washington, D. C., for plaintiff UAW.

Peter W. Waldmeir, U. S. Dept. of Justice, Washington, D. C., for defendant.

### MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge.

Plaintiffs in these consolidated cases challenge on constitutional and other grounds a recent amendment to the Federal Unemployment Tax Act (Act or FUTA), 26 U.S.C. §§ 3301 *et seq.*, requiring a state to offset unemployment compensation payments by the amount of pension or other retirement benefits received by an unemployed claimant. They allege that this "pension offset provision", section 3304(a)(15) of the Act, violates their equal protection and due process rights, impairs their contractual rights, and violates the Bill of Attainder Clause of the Constitution. Plaintiffs also claim that various directives issued by the Secretary of Labor (Secretary), instructing state agencies how to conform with the requirements of section 3304(a)(15), are regulations promulgated without meeting the requirements of the Administrative Procedure Act (APA)[1] and the Freedom of Information Act (FOIA).[2] Because of non-compliance with those statutes they urge that the directives be set aside. Finally, plaintiffs allege that the Secretary's instruction that states seek retroactive application of state conforming legislation to the effective date of the federal provision violates the FUTA requirement that unemployment benefits must be paid when due.[3]

The government argues that plaintiffs lack standing to sue and that the Court is without subject matter jurisdiction by virtue of the Tax Injunction Act.[4] As to the constitutional claims, the government asserts that the pension offset provision is rationally related to legitimate goals; that plaintiffs have no contractual right to unemployment compensation; and that the bill of attainder argument is without merit. The government also argues that the Secretary's directives are interpretative rules exempt from the APA and the FOIA requirements and that his urging that state legislation be given retroactive affect was no more than a suggestion that was not in violation of FUTA.

The parties' memoranda and the oral argument of counsel have been considered. The Court concludes that there is merit in the plaintiffs' claim that the Labor Secretary's directives are regulations subject to APA notice and comment procedures. These should not be given effect until issued in conformity with that statute. Otherwise, the plaintiffs' constitutional claims are without merit. The reasons in support of the Court's determination are set out in this opinion.

### The Parties

The plaintiffs in this consolidated proceeding are first, Lawrence Cabais and other individual recipients of social security and/or pension benefits from nine states and the District of Columbia. Following retirement, each plaintiff secured other work, subsequently became unemployed and received unemployment compensation benefits. But later their benefits were reduced or denied by virtue of the pension offset provision. Their complaint has been consolidated with a similar proceeding initiated by two national labor unions and two associations of retired persons whose memberships allegedly directly suffer from the same offset provision. The defendants are the Commissioner of the Internal Revenue Service and the Secretary of Labor.

### The Statutory Scheme

Section 3304(a)(15) was originally enacted in 1976. A later modification provided that beginning after March 31, 1980, the amount of unemployment compensation received by

---

**1.** 5 U.S.C. § 553.

**2.** *Id.,* § 552.

**3.** 42 U.S.C. § 503(a)(1).

**4.** 28 U.S.C. § 1341.

a claimant for any week that he qualified for such payments must be reduced by the amount of any retirement benefits attributable to the claimant for that week.[5] The provision was adopted as one of the minimum standards for participation of state unemployment compensation programs in a cooperative federal/state unemployment tax scheme. This cooperative venture provides for certification of a state as a participant in the federal program if it levies an unspecified unemployment tax on employers based on their unemployment "experience ratings." The state provides unemployment compensation to claimants in accordance with state law, subject only to federal minimum standards. If the Secretary of Labor certifies that a state is complying with these standards, employers in that state are allowed a 90% credit against FUTA tax liability for unemployment taxes paid to the state. FUTA monies collected directly by the federal government are provided to the states to defray the administrative costs of maintaining the unemployment program. All fifty states and the District of Columbia are currently certified participants in the program.

Beyond meeting federal minimum standards, each state is free to legislate its own requirement for claimant eligibility. When section 3304(a)(15) was enacted, some thirty-three states had disqualified recipients of private pensions from unemployment compensation, while a total of forty-six had enacted some form of disqualifying income provision to limit unemployment compensation paid to claimants with other resources. Congress specifically authorized this approach in 1970 with the enactment of section 3304(a)(10), which provided, in relevant part, that "compensation shall not be denied ... for any cause other than ... receipt of disqualifying income."

In September 1980, Congress amended section 3304(a)(15) to narrow the class of pensioners whose retirement income would lead to an offset of unemployment compensation in two relevant respects.[6] First, under the new enactment, unemployment compensation payments are only offset by benefits received from a retirement fund maintained or contributed to by a "base period" or "chargeable" employer. Under the various state laws, a claimant must have been employed during the base period, usually four of the last five calendar quarters, to qualify for unemployment compensation. The base period employer is usually also the chargeable employer, i.e., the employer (or employers) whose state unemployment insurance account is charged for the compensation paid to the unemployed former employee. Second, retirement benefits paid from a fund contributed to by the base period or chargeable employer can only be applied to disqualify unemployment payments if employer contributions during the base period qualified the claimant for or enhanced the amount of retirement benefits the claimant receives. This second narrowing provision of the amendment does not apply to social security or railroad retirement benefits.

The newly enacted section 3304(a)(15) applies only to recertifications by the Secretary of Labor starting October 1981. Section 414(b), Pub.L. 96–364, 94 Stat. 1310 (1980).

## ANALYSIS

### Standing and Jurisdiction

At the outset, the government attempts to avoid the merits by asserting that plaintiffs are without standing to challenge the federal statute and the Court has no jurisdiction over their claims. Neither objection is meritorious.

■ The standing argument hinges on the voluntary nature of state participation in the FUTA program. Because no state is required to take part in the cooperative scheme, state legislation conforming to the pension offset provision is not the result of federal compulsion and therefore the federal statute did not cause the plaintiffs' inju-

---

**5.** The text of the statute is provided at Appendix 1.

**6.** The relevant text of the statute is provided at Appendix 2.

ries. However, the government's insistence that plaintiffs can only obtain relief by challenging each state statute ignores what is indisputable—that at least some states enacted conforming legislation in direct response to the federal requirement. At least five such states have incorporated "self-destruct" clauses in their state offset laws, applying the pension reduction provision only if required by federal law.[7] Since an injunction on the operation of the federal statute will provide plaintiffs in at least these states with relief, they have standing to proceeding. *See Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 45, 96 S.Ct. 1917, 1927, 48 L.Ed.2d 450 (1976). In a recent challenge to section 3304(a)(15), Chief Judge Peckham of the Northern District of California similarly concluded that California plaintiffs had standing to challenge the federal statute by virtue of the self-destruct provision in that state's conforming legislation. *Rivera v. Patino,* 524 F.Supp. 136 (N.D.Cal.1981).[8]

■ The Tax Injunction Act,[9] which bars federal jurisdiction in actions to enjoin or invalidate the "assessment" of any state tax, is also inapplicable here. Since any decision for plaintiffs could only lead to an increase in employer tax liabilities,[10] no interference with the *assessment* of a state tax could result from this Court's decision. Therefore that statute poses no bar to reaching the merits of this proceeding. *See Hargrave v. McKinney,* 413 F.2d 320, 326 (5th Cir. 1969); *Rivera,* at 142–43.

### The Constitutional Claims

The plaintiffs' several constitutional claims are not to be minimized. However, they can be adequately addressed in the brief discussion that follows.

### A. Equal Protection and Due Process Violations

■ Plaintiffs allege that the pension offset provision violates the equal protection component of the due process clause of the Fifth Amendment for a number of reasons, generally focusing on differences in treatment within the statute between pension income and other income in offsetting unemployment and on differences in treatment among various forms and types of payment of pensions. The standard of review applicable here is the long-established "rational basis" test. *See Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 942, 59 L.Ed.2d 171 (1979); *New Orleans v. Duke,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976). Because none of the distinctions impair fundamental constitutional rights or create suspect classifications, this social welfare legislation must be upheld unless the plaintiffs can show that the provision is not rationally related to any legitimate government interest. *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161–62, 25 L.Ed.2d 491 (1970).

■ The government has identified several legitimate interests served by the pension offset provision: (1) providing uniform minimum state standards for disqualifying income; (2) providing an administratively convenient method of determining and excluding from unemployment compensation persons who are no longer in the labor force; (3) preserving the corpus of state unemployment insurance funds; and (4) preventing an employer from paying two forms of benefits—retirement and unemployment compensation—to the same employee. Any one of these reasons supplies

---

**7.** These states are: California, *Cal.Un.Ins.Code,* § 1255.3(b) (West); Hawaii, *Hawaii Rev.Stat.,* § 383–[46]; Michigan, *Mich.Comp.Laws Ann.,* § 421.27(f)(5); New York, *N.Y. Labor Law* (McKinney), § 600(7)(a); and Ohio, *Ohio Rev. Code Ann.,* § 4141.312.

**8.** Chief Judge Peckham upheld the constitutionality of the statute against challenges similar to those raised here. Reference will be made to *Rivera* throughout this opinion.

**9.** 28 U.S.C. § 1341.

**10.** Since each state computes an employer's unemployment tax liability based on compensation payments charged to the employer's account, *see supra* at 4, the effect of plaintiffs and those similarly situated drawing increased payments from unemployment insurance funds would be to increase the employers' tax liabilities.

the minimal rationality necessary to withstand constitutional challenge. *Accord, Rivera,* at 146.

This broad latitude accorded Congress in legislating for social and economic welfare was recently reiterated by the Supreme Court in *United States Railroad Retirement Board v. Fritz,* 449 U.S. 166, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980). In upholding Congress's restructuring of railroad retirement benefits to prevent a windfall to some employees who were also eligible for social security, the Court, quoting from *Dandridge,* stated:

> "If a classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' ... 'The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be and unscientific.' "

*Id.,* 100 S.Ct. at 459 (citations omitted). The Court cannot conclude that an equal protection or due process violation is present in the face of this language.

## B. *Impairment of Contracts*

■ Several plaintiffs allege that they negotiated pension payments in anticipation of maintaining their eligibility for unemployment benefits and that the pension offset provision deprives them of due process by denying what they in effect assert are negotiated-for unemployment benefits. The short answer to this claim, however, is that there is no contractual right to unemployment compensation. *See Richardson v. Belcher,* 404 U.S. 78, 80, 92 S.Ct. 254, 257, 30 L.Ed.2d 231 (1970) ("Nor does the expectation of public benefits confer a contractual right to receive the expected amounts."). Since section 3304(a)(15) only reduces these public benefits, no contractual rights of the plaintiffs are impaired.

## C. *Bill of Attainder*

■ Plaintiffs also argue that the pension offset provision punishes a defined group of people, pensioners, by depriving them of unemployment benefits and thereby reducing their standard of living—a violation of the Bill of Attainder Clause. However, this contention is no more than a recast of plaintiffs' equal protection claims. The bill of attainder provision is not breached merely because a group of persons is burdened by an act of Congress. *See Nixon v. Administrator of General Services,* 433 U.S. 425, 471, 97 S.Ct. 2777, 2804, 53 L.Ed.2d 867 (1977).

### Labor Department Directives

In discharging his duty to oversee compliance with the FUTA program, the Secretary of Labor has issued directives to the states informing them of various requirements to remain in conformity with the federal statute. Plaintiffs challenge a number of instructions in three of these directives, asserting that they are in fact regulations issued without following the notice and comment procedures required by APA section 553, and the publication requirements of FOIA section 552(a)(1)(D).

■ Two of these directives take the form of Unemployment Insurance Program Letters (UIPLS). They set out requirements for prorating monthly and lump sum pension payments on a weekly basis, treatment of social security and railroad retirement benefits, and determining the offset amount of pension payments enhanced by a base period employer.[11] The third directive is a letter from the Secretary to a number of governors of states that had not enacted conforming legislation by the March 31, 1980 effective date of section 3304(a)(15). The letter requires those states to enact conforming legislation with retroactive effect to March 31, 1980.[12] Relying on the substantial impact that one of these di-

---

11. UIPL 24–80, issued March 17, 1980, Plaintiffs' Motion for Preliminary Injunction C.A. No. 80–2580, Exhibit H; UIPL 7–81, issued October 9, 1980, *id.,* Exhibit E.

12. *See* Letter to Michigan Governor William Milliken, April 16, 1980, *id.,* Exhibit A.

rectives, UIPL 7–81, had upon the plaintiffs in *Rivera*, Chief Judge Peckham concluded that notice and comment procedures must be complied with and remanded the proceeding to the Secretary to reissue UIPL 7–81 in accordance with section 553. At 147–49. This Court has considered the matter and agrees with that determination.

The government argues that these directives are exempt from section 553's notice and comment procedures because they are no more than interpretative rules, expressly outside the APA's rulemaking requirements. Section 553(b)(A). The government also asserts that because the states could choose to abandon the FUTA program, the directives do not have the force and effect of binding regulations.

 Only rules without a substantial impact on the operation of the statute, i.e., statements of "clarification or explanation of an existing statute," are exempt from APA notice and comment procedures. *Guardian Federal Savings and Loan v. Federal Savings and Loan Insurance Corporation*, 589 F.2d 658, 664 (D.C.Cir.1978). It cannot be denied that these directives have substantial impact on participants in the unemployment insurance program who receive some form of retirement benefit. *Rivera*, at 148. And the voluntary nature of these directives is overshadowed by the improbability that any state would risk decertification merely because it disputed the reach of the Secretary's interpretations of the statute. These rules bind the states as long as they participate in the program and in many instances will determine whether an unemployed claimant will qualify for compensation. Therefore they must be considered substantive rules subject to section 553's promulgation procedure. *Guardian Federal Savings and Loan, supra; Pacific Gas and Electric Co. v. Federal Power Commission*, 506 F.2d 33, 37–39 (D.C.Cir.1974). As Chief Judge Peckham noted in *Rivera* :

Whether or not the directive is in fact inconsistent with the statute which it purports to implement, "elementary fairness" requires that these significantly affected individuals, and other interested members of the public, be afforded an opportunity to comment on the question. At 149.

On the basis of the above, the Secretary should be enjoined from enforcing these directives until they are promulgated in accordance with section 553.[13]

An appropriate order accompanies this Memorandum Opinion.

## ORDER

In accordance with the accompanying Memorandum Opinion, it is this 27th day of August, 1981

ORDERED that plaintiffs' motion for summary judgment challenging the directives issued by the Secretary of Labor is granted, and it is adjudged and declared that the directives in question were issued in violation of 5 U.S.C. § 553; and it is

FURTHER ORDERED that the Secretary of Labor is enjoined from enforcing the directives unless and until he shall first comply with the requirements of the Administrative Procedure Act, 5 U.S.C. § 553; and it is

FURTHER ORDERED that defendants' motion to dismiss the constitutional claims is granted and the complaints in these consolidated proceedings as related to those and other claims are dismissed with prejudice, except as provided above.

### *Appendix*

1. As originally enacted in 1976, 26 U.S.C. § 3304(a)(15) provided:

The amount of compensation payable to an individual for any week which begins after March 31, 1980, and which begins in a period with respect to which

---

**13.** In light of this ruling it necessarily follows that these directives must be published in the Federal Register under both the APA, section 553(b), and FOIA, section 552(a)(1)(D). Because of the invalidation of the Secretary's instruction to states to apply conforming legislation retroactively, the Court need not reach the claim that the instruction violates 42 U.S.C. § 503(a)(1).

such individual is receiving a governmental or other pension, retirement or retired pay, annuity, or any other similar periodic payment which is based on the previous work of such individual shall be reduced (but not below zero) by an amount equal to the amount of such pension, retirement or retired pay, annuity, or other payment, which is reasonably attributable to such week.

2. The amended form of section 3304(a)(15) added the following exceptions to the 1976 enactment:

except that—

(A) the requirements of this paragraph shall apply to any pension, retirement or retired pay, annuity, or other similar periodic payment only if—

(i) such pension, retirement or retired pay, annuity, or similar payment is under a plan maintained (or contributed to) by a base period employer or chargeable employer (as determined under applicable law), and (ii) in the case of such a payment not made under the Social Security Act or the Railroad Retirement Act of 1974 (or the corresponding provisions of prior law), services performed for such employer by the individual after the beginning of the base period (or remuneration for such services) affect eligibility for, or increase the amount of, such pension, retirement or retired pay, annuity, or similar payment, and

(B) the State law may provide for limitations on the amount of any such a reduction to take into account contributions made by the individual for the pension, retirement or retired pay, annuity, or other similar period payment.