(659 P.2d 236)

No. 54,243

ALICE T. LEIKER, *Appellant*, v. EMPLOYMENT SECURITY BOARD OF REVIEW and JOSTEN'S AMERICAN YEARBOOK CO., INC., *Appellees.*

Opinion filed February 24, 1983.

*Terry D. Watson*, of McCullough, Wareheim & LaBunker, of Topeka, for appellant.

*Marlin A. White*, of Topeka, for appellees.

Before FOTH, C.J., ABBOTT and MEYER, JJ.

MEYER, J.: This appeal is taken from the decisions of the Shawnee District Court and the Employment Security Board of Review, which partially denied appellant's unemployment benefits.

Alice T. Leiker (appellant) was employed by Josten's American Yearbook Co., Inc., from November, 1979, until August 13, 1980. On that later date, she was laid off from her job. She applied for unemployment compensation, but was informed that her benefits would be reduced, pursuant to K.S.A. 44-706(n), by the amount she received monthly from the Social Security Administration.

She appealed this decision by the examiner to a referee. A hearing was held on September 16, 1980. At this hearing, appellant testified that she received Social Security benefits of $344.00 per month. The referee found that appellant's Social Security benefits were $86.00 per week; she was also entitled to $86.00 per week in unemployment compensation. Thus, he determined that these amounts totally offset one another, so that she was not entitled to any unemployment benefits.

The referee subsequently amended his decision, finding that $344.00 per month in Social Security benefits computed to only $79.00 per week, and that therefore appellant was entitled to $6.00 per week in unemployment benefits.

Appellant appealed the amended decision of the referee to the Employment Security Board of Review (appellee, hereinafter "Board"). By decision dated October 24, 1980, the Board affirmed the decision of the referee in all respects, adopting by reference his findings of fact.

Appellant then brought a timely appeal of the Board's decision to the District Court of Shawnee County, Kansas, pursuant to K.S.A. 44-709(i), and K.S.A. 60-2102. In her petition for review, she contended that K.S.A. 44-706(n) was unconstitutional, under both the United States and Kansas Constitutions, as a violation of due process of law. Both parties filed memoranda in support of their positions. On February 12, 1982, the district court upheld the constitutionality of K.S.A. 44-706(n), and affirmed the decision of the Board. Appellant perfected her appeal to this court.

The issue on appeal is whether the provisions of K.S.A. 44-706(n) violate due process of law, thus rendering that subsection unconstitutional and void.

At the outset, we would note that K.S.A. 44-706(n) has been amended by L. 1982, ch. 215, § 1, effective July 1, 1982. Because appellant's claim arose prior to such amendment, her right to benefits is governed by the statute then in effect. See K.S.A. 77-201 *First*. Thus, we will confine our discussion herein to consideration of K.S.A. 44-706(n), as it read prior to its most recent revision by the legislature.

Appellant assails the constitutionality of K.S.A. 44-706(n), on the ground that it deprives her of a property right without due process of law, in violation of the Fourteenth Amendment to the United States Constitution and Sections 1 and 2 of the Bill of

Rights of the Kansas Constitution. K.S.A. 44-706(*n*) provides:

"For any week which begins after March 31, 1980, and which begins in a period with respect to which such individual is receiving a governmental or other pension, retirement or retired pay, annuity or other similar periodic payment which is based on the previous work of such individual, except that, if such individual's weekly benefit amount exceeds such governmental or other pension, retirement or retired pay, annuity or other similar periodic payment attributable to such week, the weekly benefit amount payable to the individual shall be reduced (but not below zero) by an amount equal to the amount of such pension, retirement or retired pay, annuity or other similar periodic payment which is attributable to such week. If the reduced weekly benefit amount is not a multiple of one dollar, it shall be computed to the next higher multiple of one dollar."

K.S.A. 44-706(*n*) was patterned after 26 U.S.C. § 3304(a)(15) (Supp. V 1981), which provides:

"[T]he amount of compensation payable to an individual for any week which begins after March 31, 1980, and which begins in a period with respect to which such individual is receiving a governmental or other pension, retirement or retired pay, annuity, or any other similar periodic payment which is based on the previous work of such individual shall be reduced (but not below zero) by an amount equal to the amount of such pension, retirement or retired pay, annuity, or other payment, which is reasonably attributable to such week  . . . ."

The reason for enactment of 44-706(*n*) was compliance with the federal minimum standards under the Federal Unemployment Tax Act, 26 U.S.C. § 3301 *et seq.* Failure to comply with these minimum standards will result in the state losing its eligibility for federal reimbursement of the cost of administering the program; moreover, employers within the state would lose the benefit of federal tax credits for the unemployment insurance they pay.

The Fourteenth Amendment to the United States Constitution provides, in pertinent part:

"No State shall  . . .  deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The due process clause of the Fourteenth Amendment is designed to secure equal protection under the law for all persons similarly situated, and to guard the individual against the arbitrary exercise of governmental powers. 16A C.J.S., Constitutional Law § 569, pp. 559-588. In this respect, substantive due process is closely akin to the equal protection clause also found in the Fourteenth Amendment. These goals have been the essence of a

long line of decisions by the United States Supreme Court turning on due process considerations, where, as here, no suspect classifications (*i.e.*, race, religion or alienage) or fundamental constitutional rights are involved.

"[T]his Court has consistently recognized that the Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways. *Barbier v. Connolly*, 113 U.S. 27 (1885); *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61 (1911); *Railway Express Agency v. New York*, 336 U.S. 106 (1949); *McDonald v. Board of Election Commissioners*, 394 U.S. 802 (1969). The Equal Protection Clause of that amendment does, however, deny to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' *Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920)." *Reed v. Reed*, 404 U.S. 71, 75-76, 30 L.Ed.2d 225, 92 S.Ct. 251 (1971).

See also *Vance v. Bradley*, 440 U.S. 93, 97, 59 L.Ed.2d 171, 99 S.Ct. 939 (1979); and *New Orleans v. Dukes*, 427 U.S. 297, 303, 49 L.Ed.2d 511, 96 S.Ct. 2513 (1976).

The Kansas Supreme Court has made similar pronouncements.

"A state may create a statutory classification of persons within the scope of its police power. Classification necessarily involves discrimination. Yet it is only invidious discrimination with no rational basis for the statutory classification that offends the equal protection guarantee. *Dandridge v. Williams*, 397 U.S. 471, 25 L.Ed.2d 491, 90 S.Ct. 1153." *Baker v. List and Clark Construction Co.*, 222 Kan. 127, 130, 563 P.2d 431 (1977).

The "arbitrary or capricious" standard was applied in *Cardarella v. City of Overland Park*, 228 Kan. 698, 701, 620 P.2d 1122 (1980):

"The guarantee of due process demands only that the statute shall not be unreasonable, arbitrary, or capricious and that the means selected shall have a real and substantial relation to the objective sought to be obtained. *Nebbia v. New York*, 291 U.S. 502, 78 L.Ed. 940, 54 S.Ct. 505 (1934)."

And in *Sheppard v. Sheppard*, 230 Kan. 146, Syl. ¶1, 630 P.2d 1121 (1981), the due process test was stated in these terms:

"The test as to whether a statute comports with the due process clause is whether the legislative means selected has a real and substantial relation to the objective sought, or whether the regulation is reasonable in relation to its subject and is adopted in the interest of the community."

When a statute is attacked on constitutional grounds, the courts are to be guided by certain presumptions and rules of construc-

tion. These were summarized in *City of Baxter Springs v. Bryant*, 226 Kan. 383, Syl. ¶¶ 1-4, 598 P.2d 1051 (1979):

"The constitutionality of a statute is presumed, all doubts must be resolved in favor of its validity, and before the statute may be stricken down, it must clearly appear the statute violates the Constitution."

"In determining constitutionality, it is the court's duty to uphold a statute under attack rather than defeat it and, if there is any reasonable way to construe the statute as constitutionally valid, that should be done."

"Statutes are not stricken down unless the infringement of the superior law is clear beyond substantial doubt."

"The propriety, wisdom, necessity and expedience of legislation are exclusively matters for legislative determination and courts will not invalidate laws, otherwise constitutional, because the members of the court do not consider the statute in the public interest of the state, since, necessarily, what the views of members of the court may be upon the subject is wholly immaterial and it is not the province nor the right of courts to determine the wisdom of legislation touching the public interest as that is a legislative function with which courts cannot interfere."

See also *Tri-State Hotel Co. v. Londerholm*, 195 Kan. 748, 760, 408 P.2d 877 (1965).

The legislative purpose in enacting the Employment Security Law, K.S.A. 44-701 *et seq.*, was specifically declared at K.S.A. 44-702, which follows:

"As a guide to the interpretation and application of this act, the public policy of this state is declared to be as follows: Economic insecurity, due to unemployment, is a serious menace to health, morals, and welfare of the people of this state. Involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. The achievement of social security requires protection against this greatest hazard of our economic life. This can be provided by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor-relief assistance. The legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this state require the enactment of this measure, under the police powers of the state, for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed."

As stated in *City of Baxter Springs v. Bryant*, 226 Kan. 383, Syl. ¶ 4, the wisdom of this declaration is not an issue before this court; the sole question here is whether the classifications created by 44-706(*n*) are reasonably related to this stated objective. If so, such classifications must be upheld; if not, then they

are arbitrary and capricious, and should be ruled unconstitutional.

Appellant argues that reduction of unemployment benefits due to receipt of pensions, social security or other retirement benefits creates an arbitrary and artificial class, because persons receiving payments from investments, savings or any other source not based on previous work do not suffer a similar reduction in unemployment benefits. This classification, she argues, places pensioners in a class considered less needy than persons who may receive substantially greater monthly stipends from nonwork-related sources.

Need has never been considered a prerequisite to receipt of unemployment benefits. The courts have consistently upheld unemployment compensation statutes which allow payment of benefits to other than the indigent or to some persons less deserving than others. See *California Human Resources Dept. v. Java*, 402 U.S. 121, 28 L.Ed.2d 666, 91 S.Ct. 1347 (1971), and *Carmichael v. Southern Coal Co.*, 301 U.S. 495, 81 L.Ed. 1245, 57 S.Ct. 868 (1937). Thus, the issue remains whether the classification in the instant case bears a rational relationship to a legitimate state interest, and whether that interest can reasonably be said to serve the declared policy underlying our state's employment security law.

This case presents a question of first impression before the Kansas courts; but the federal courts have several times rejected constitutional challenges against 26 U.S.C. § 3304(a)(15) and corresponding state statutes, where such challenges essentially mirrored the one asserted in the case at bar. Examples include *Rivera v. Patino*, 524 F. Supp. 136 (N.D. Cal. 1981); *Cabais v. Egger*, 527 F. Supp. 498 (D.D.C. 1981), and *McKay v. Horn*, 529 F. Supp. 847 (D.N.J. 1981).

In each of the cases cited above, the court applied the "rational basis" test to resolve the question of constitutional infirmity. Moreover, in each of these cases, the court recognized that the judiciary is precluded from questioning the wisdom or fairness of legislative policy judgments. And in each case, the court upheld the statutes under attack. Several reasons, or "rational bases," were advanced; these were set forth succinctly in *Cabais v. Egger*, as follows:

"(1) providing uniform minimum state standards for disqualifying income; (2)

providing an administratively convenient method of determining and excluding from unemployment compensation persons who are no longer in the labor force; (3) preserving the corpus of state unemployment insurance funds; and (4) preventing an employer from paying two forms of benefits—retirement and unemployment compensation—to the same employee." 527 F. Supp. at 502.

*Rivera v. Patino,* 524 F. Supp. at 145-146, and *McKay v. Horn,* 529 F. Supp. at 861-862, also cited some or all of these bases.

We concur with the conclusion reached by Judge Parker, in *Cabais v. Egger,* 527 F. Supp. at 502-503, that "[a]ny one of these reasons supplies the minimal rationality necessary to withstand constitutional challenge."

The statutory classifications of K.S.A. 44-706(n), imposed without individual analysis of each applicant's case, are justified by these sound and legitimate state interests; and these interests serve and promote, and are hence reasonably related to, the declared policy underlying the Employment Security Law of Kansas.

It is of no benefit to appellant's cause that the classifications set up under 26 U.S.C. §3304(a)(15) and K.S.A. 44-706(n) are not made with mathematical precision, nor that they result in some degree of discriminatory treatment among applicants.

"In social and economic legislation, a statutory classification does not violate the equal protection clause merely because its classifications are imperfect. (See, *Village of Belle Terre v. Boraas,* 416 U.S. 1, 39 L.Ed.2d 797, 94 S.Ct. 1536; *San Antonio School District v. Rodriguez,* 411 U.S. 1, 36 L.Ed.2d 16, 93 S.Ct. 1278, reh. denied, 411 U.S. 959, 36 L.Ed.2d 418, 93 S.Ct. 1919; and *Jefferson v. Hackney,* 406 U.S. 535, 32 L.Ed.2d 285, 92 S.Ct. 1724, reh. denied, 409 U.S. 898, 34 L.Ed.2d 156, 93 S.Ct. 178.) Nor does the equal protection clause require a state 'to choose between attacking every aspect of a problem or not attacking the problem at all.' (*Dandridge v. Williams,* 397 U.S. 471, 487, 25 L.Ed.2d 491, 90 S.Ct. 1153, reh. denied, 398 U.S. 914, 26 L.Ed. 80, 90 S.Ct. 1684; and *San Antonio School District v. Rodriguez,* supra at 42.)" *Brown v. Wichita State University,* 219 Kan. 2, 13, 547 P.2d 1015 (1976).

Accord *Rivera v. Patino,* 524 F. Supp. at 146.

In our opinion, K.S.A. 44-706(n) passes constitutional muster under the due process and equal protection provisions of the Fourteenth Amendment. Appellant also challenges that section's validity under Sections 1 and 2 of the Bill of Rights of the Kansas Constitution.

"The equal protection clause of the Fourteenth Amendment to the United States Constitution finds its counterpart in Sections 1 and 2 of the Bill of Rights of the Kansas Constitution which declares in substance that 'all men are possessed of

equal and inalienable natural rights, among which are life, liberty and the pursuit of happiness,' and that 'all free governments . . . are instituted for the equal protection and benefit of the people.' While these two provisions of our Bill of Rights declare a political truth, they are given much the same effect as the clauses of the Fourteenth Amendment relating to due process and equal protection of the law." *Henry v. Bauder*, 213 Kan. 751, 752-753, 518 P.2d 362 (1974).

See also *Manzanares v. Bell*, 214 Kan. 589, Syl. ¶ 5, 522 P.2d 1291 (1974).

The protections afforded by Sections 1 and 2 being duplicative of those provided by the Fourteenth Amendment, the test for constitutional transgression should also be identical—*i.e.*, if a law does not violate the Fourteenth Amendment to the United States Constitution, neither does it violate Sections 1 and 2 of the Bill of Rights of the Kansas Constitution. Thus, there is no merit to appellant's attack of K.S.A. 44-706(*n*) on state constitutional grounds.

Finally, we would note that a similar issue was presented in *Brown v. Goodyear Tire & Rubber Co.*, 3 Kan. App. 2d 648, 599 P.2d 1031 (1979), *aff'd* 227 Kan. 645, 608 P.2d 1356 (1980). Appellant in *Brown* challenged the constitutionality of K.S.A. 1974 Supp. 44-510f(*c*) on due process and equal protection grounds. That statute (since repealed) provided in essence that a claimant was not entitled to disability benefits from and after such date as he became entitled to or during such period as he received federal old age social security benefits. K.S.A. 1974 Supp. 44-510f(*c*) thus eliminated benefits under the workmen's compensation act entirely if the claimant received any social security. In this respect, its operation was even more harsh than that of 44-706(*n*), now under consideration. Notwithstanding this recognized harshness, the court in *Brown* concluded that 44-510f(*c*) did not create an arbitrary classification, but was rationally justified, as consistent with the system of wage-loss compensation which forms the basis for the workmen's compensation act. We have reached a similar system of wage-loss compensation under the Employment Security Law.

The provisions of K.S.A. 44-706(*n*) are rationally based upon legitimate state interests and bear a reasonable relationship to the attainment of those interests. The classifications created by that section offend neither the Fourteenth Amendment to the United States Constitution nor Sections 1 and 2 of the Bill of

Rights of the Kansas Constitution; K.S.A. 44-706($n$) is therefore a constitutionally valid exercise of legislative prerogative.

Affirmed.