148

Don W. Novak, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued October 7, 1982, before Judges ROGERS, WILLIAMS, JR. and DOYLE, sitting as a panel of three.

*Stephen P. McCloskey, Phillips & Faldowski,* for petitioner.

*Marybeth A. Stanton,* Deputy Attorney General, with her *Allen C. Warshaw,* Deputy Attorney General, Chief Special Litigation Section, and *LeRoy S. Zimmerman,* Attorney General, for respondent.

OPINION BY JUDGE WILLIAMS, JR., March 25, 1983:

Don W. Novak (claimant) appeals an order of the Unemployment Compensation Board of Review denying him benefits under Section 404(d)(iii) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §804(d)(iii), which rendered him ineligible for benefits due to his receipt of a U.S. Marine Corps Military Pension.

The claimant was employed by the Penn-Birmingham Bolt Company from March 1980 until April 3, 1981 when he was laid off due to poor business conditions. Prior to his employment with the Bolt Company, he had served 22 years with the U.S. Marine Corps for which he receives a monthly pension of $1,199.99, or $276.00 weekly.

On April 5, 1981 the claimant applied for unemployment compensation benefits. It was established that he was entitled to $175/week with a total benefit entitlement of $5,250.00. After the filing of his application for benefits, he was notified by the Bureau of Unemployment Security that he would be ineligible for benefits as per Section 404(d)(iii) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43

P.S. 804(d)(iii). Section 404(d)(iii) provides in pertinent part:

> (d) [E]ach eligible employee . . . shall be paid . . . compensation in an amount equal to his weekly benefit rate less . . .
>
> (iii) an amount equal to the amount of a governmental or other pension . . . which is based on previous work of such individual. . . .

The claimant contends that by virtue of a 1980 amendment to the Federal Unemployment Tax Act (FUTA),[1] federal law has pre-empted Section 404(d)(iii) in that this section is now in direct conflict with FUTA as amended. Accordingly, he asserts that his rights to unemployment benefits have been improperly denied.

The amendment to which the claimant refers is Section 414 of the Multiemployer Pension Plan Amendment Act of 1980,[2] 26 U.S.C. §3304(a)(15), which provides in part that:

> [T]he amount of compensation payable to an individual for any week which begins after March 31, 1980, and which begins in a period with respect to which such individual is receiving a governmental or other pension . . . which is based on the previous work of such individual shall be reduced (but not below zero) by an amount equal to the amount of such pension . . . which is reasonably attributable to such week *except that—*
>
> (A) the requirement of this paragraph shall apply to any pension . . . *only if—*
>
> (i) *such person* . . . is under a plan maintained (or contributed to) by a base period em-

---

[1] Title IX of the Social Security Act of 1935, Pub. L. No. 74-271; 49 Stat. 620 (1935), *as amended*, Pub. L. No. 96-364; 26 U.S.C. §3304 (a)(15).

[2] Pub. L. No. 96-364, §414, 94 Stat. 1208 (1980).

ployer or chargeable employer (as determined under applicable law).... [3]

While it is true that on a comparative basis the Pennsylvania law is broader in its pension offset provision than its federal counterpart, this does not necessarily mean that the two laws are in such conflict as to render the doctrine of pre-emption applicable.[4] "A duly enacted state law will not be found to violate the Supremacy Clause of the United States Constitution unless the state law and the federal law are so inconsistent that they cannot be constructed in such a way as to permit both to stand." *Shapp v. Sloan,* 480 Pa. 449, 471, 391 A.2d 595, 606 (1978).

"[U]nemployment insurance is a system of 'cooperative federalism,' in which each state receives federal funds to reimburse its costs of administering the program. ... To receive these benefits, a state's program must meet certain federal requirements." *Rivera v. Patino,* 524 F. Supp. 136, 140 (N.D. Calif. 1981). Accordingly, Congress, by enacting Section 414, has set forth certain minimum standards for compliance by the states, in order for each of them to be eligible for participation in this joint federal/state unem-

---

[3] It is undisputed that the United States Marine Corps is not a base-period or chargeable employer.

[4] The doctrine of pre-emption establishes the essential tenet of federalism that state laws which impinge on an exclusive federal domain are not enforceable. *Carpenters Pension Trust, Etc. v. Kronschnabel,* 460 F. Supp. 978 (C.D. Cal. 1978). This doctrine exists by virtue of Article VI, Cl. 2 of the United States Constitution which states:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

ployment compensation system. *McKay v. Horn*, 529 F. Supp. 847 (D.N.J. 1981), *Cabais v. Egger*, 527 F. Supp. 498 (D.D.C. 1981). "Beyond meeting [these] federal minimum standards, each state is free to legislate its own requirement[s] for claimant eligibility." *Id.* at 501.

Section 404(d)(iii) of the Pennsylvania law clearly meets the minimum standards as set forth in Section 414 of the federal law. The Pennsylvania law *not only* reduces benefits by pensions attributable to base-period or chargeable employers, thereby meeting the minimum federal standards, but it reduces benefits by amounts attributable to *any* pension. Accordingly, it cannot be said that Section 404(d)(iii) is in conflict with federal law so as to render the doctrine of preemption applicable.

The claimant also raises a due process argument. It is his contention that the failure of the Pennsylvania legislature to amend its law to conform with Section 3304(a)(15) of the federal law deprives him of benefits without due process of law. He further asserts that he was not afforded *meaningful* notice or opportunity to be heard in that the referee was without power to grant him benefits, since the referee was bound by the allegedly unconstitutional Pennsylvania law.

In addressing the claimant's due process argument, we initially note that the requirement of due process, as it applies to the States through the Fourteenth Amendment of the United States Constitution, concerns the fundamental fairness of a State's dealing with an individual. *McCoy v. State Board of Medical Education and Licensure*, 37 Pa. Commonwealth Ct. 530, 391 A.2d 723 (1978). While "due process has never been, and perhaps can never be, precisely defined," *Lassiter v. Department of Social Services*, 452 U.S. 18, 24 (1981), it does afford persons substantive

and procedural guarantees. The claimant here alludes to both.

The test for substantive due process in the areas of social and economic legislation is whether the challenged law has a rational relation to a valid state objective(s). *Koch v. Yunich,* 533 F.2d 80 (2nd Cir. 1976), citing *Williamson v. Lee Optical of Oklahoma, Inc.,* 348 U.S. *483* (1955), and *Nebbia v. New York,* 291 U.S. 502 (1934). In enacting the Unemployment Compensation Law in Pennsylvania, the legislature has formally declared the public policy behind the Law as follows:

Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of the Commonwealth. Involuntary unemployment and its resulting burden of indigency falls with crushing force upon the unemployed worker, and ultimately upon the Commonwealth and its political subdivisions in the form of poor relief assistance. Security against unemployment and the spread of indigency can best be provided by the systematic setting aside of financial reserves to be used as compensation for loss of wages by employes during periods when they become unemployed through no fault of their own. The principle of the accumulation of financial reserves, the sharing of risks, and the payment of compensation with respect to unemployment meets the need of protection against the hazards of unemployment and indigency. The Legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this Commonwealth require the exercise of the police powers of the Commonwealth in the enactment of this act for the compulsory setting aside of unemployment reserves to be used for

the benefit of persons unemployed through no fault of their own.

43 P.S. §752. Given this policy declaration, it cannot be said that the off-set provision of Section 404(d) (iii) has no rational relation to the stated objectives of the Unemployment Compensation Law. Off-setting a person's entitlement to benefits by amounts received through pensions preserves the unemployment funds for those people whose only hope of relief from sudden unemployment rests upon the funds maintained by the unemployment compensation reserves. The spread of indigency is therefore slowed down by the preservation of funds for those who truly need them. While we can sympathize with the feeling that Section 404(d) (iii) does not reach those groups of persons who could better afford to have their unemployment benefits offset by amounts attributable to other sources of income other than pensions, we are powerless to make this legislative determination and recognize that our legislature is not constitutionally required to eradicate an entire evil, but may proceed on a piecemeal basis. *Williamson v. Lee Optical of Oklahoma, supra.*

We must also dismiss the claimant's procedural due process argument. Since we have already concluded that the Pennsylvania law conforms with minimum federal standards, the claimant's assertion that he was not afforded a meaningful opportunity to be heard because the referee was bound by an unconstitutional statute must fail. The claimant was afforded a fair hearing and had his benefits reduced according to law.

The order of the Board denying benefits to the claimant must therefore be affirmed.

### ORDER

AND Now, this 28th day of March, 1983, the order of this Court dated March 25, 1983, entered to the above caption, is amended to read in pertinent part:

the order of the Unemployment Compensation Board of Review, dated July 27, 1981, No. B-197624, denying benefits to the claimant, Don W. Novak, is hereby affirmed.

Judge DOYLE dissents.