The Honorable Kenny A. Wilk State Representative, Forty-Second District State Capitol, Room 174-W Topeka, Kansas 66612-1504
Dear Representative Wilk:
As representative for the forty-second district, you request our opinion regarding whether a unified school district may assess varying charges for use of school facilities by individuals and organizations. You present the policy of unified school district no. 458 (USD 458) as an example.
Pursuant to subsection (d) of K.S.A. 72-8212, the board of education of a unified school district "may open any and all school buildings for community purposes and may adopt rules and regulations governing use of school buildings for those purposes." Exercising this authority, the board of education for USD 458 has established a policy regarding use of its school buildings. The policy establishes three classifications:
 "Class I Chartered public organizations whose purpose and activities are public service oriented and whose membership are wide open and non-restrictive. Included in this classification, although not necessarily an all-inclusive list, are school organizations, organizations for youth and political organizations. Examples: District 4-H Clubs, District Boy Scouts, District Girl Scouts and District Community Education, District Athletic and Recreation Associations.
 "Class II Other organized or individual community groups whose purpose and activities are beneficent but whose membership is restrictive and whose scope of programmed activities is generally limited to the welfare and benefits of its own constituency and are nonprofit. Examples: Churches within the school district, Chamber of Commerce and other civic organizations.
 "Class III The gymnasium only can be used by district patrons. A charge of $10.00 per hour will be required for use of the gymnasium. The charge will cover any minor damage caused by the usage of gymnasium by the individuals using the area and for the electricity and clean up required by the district. The proper form will be filled out ahead of time and the key for the gymnasium will be picked up from the building principal. Any abuse by patrons or lack of following directions as reported by the principal will cause the individuals or the group to be restricted from use of the gymnasium. The key will be picked up and returned by the district resident." Unified School District No. 458, Policy EBF (August 15, 1994).
Charges assessed for use of school facilities are based on the classification of the individual or group requesting use of the school facility. Id. "In every case a responsible citizen who is a resident of the district must assume responsibility for the group and must guarantee payment of the fee." Id. "The facilities of the district are not available for usage by agencies or individuals outside of the district except under very unusual circumstances and only when approved by the board." Id.
The United States constitution, Amend. 14, sec. 1, states:
 "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."
Section 1 of the Kansas bill of rights is a counterpart to the equal protection clause of the United States constitution.Sharples v. Roberts, 249 Kan. 286, 289 (1991). This section provides:
 "All men are possessed of equal and inalienable natural rights, among which are life, liberty, and the pursuit of happiness. Kan. Const., bill of rights, sec. 1.
Equal protection arguments under the Kansas constitution and the United States constitution are generally based upon allegations that a particular statutory classification denies to the person or parties falling within the classification some right which is not denied to others alleged to be similarly situated. Bair v. Peck,248 Kan. 824, 830 (1991). The protections afforded by section 1 being duplicative of those provided by the fourteenth amendment, the test for constitutional transgression should also be identical; if a law does not violate the fourteenth amendment of the United States constitution, neither does it violate section 1
of the bill of rights of the Kansas constitution. Leiker v.Employment Security Board of Review, 8 Kan. App. 2d 379, 387 (1983).
Equal protection analysis must begin with a determination of the applicable level of judicial scrutiny to be applied in analyzing the statute in question. Bair v. Peck, 248 Kan. at 830; GuardianTitle Co. v. Bell, 248 Kan. 146, 155 (1991). The United States Supreme Court has established three degrees of scrutiny to be applied when examining the relationship between the classification and the objective of the legislature; strict scrutiny if there is a suspect classification or a fundamental right implicated, heightened scrutiny if there is a quasi-suspect classification involved, and otherwise a rational basis test. Stephenson v.Sugar Creek Packing, 250 Kan. 768, 774 (1992). The classifications established by the policy of USD 458 are not based on those factors recognized as establishing suspect or quasi-suspect classifications. Therefore, the policy of the school district is subject to the rational basis test.
 "The least strict scrutiny is referred to as the `rational basis' test. Relevance is the only relationship required between the classification and the objective. In McGowan v. Maryland, 366 U.S. 420, 425, 6 L.Ed.2d 393, 81 S.Ct. 1101 (1961), it was explained that `[t]he constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective.' Insofar as the objective is concerned, `[a] statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' 366 U.S. at 426. Thus, it appears that the legislature's purpose in creating the classification need not be established. The classification must, however, bear a rational relationship to a legitimate objective. As noted by Justice Marshall in his dissent in Lyng v. Automobile Workers, 485 U.S. 360, 375, 99 L.Ed.2d 380, 108 S.Ct. 1184 (1988):
"`The Court fails to note, however, that this standard of review, although deferential, "`is not a toothless one.'" Mathews v. DeCastro, 429 U.S. 181, 185 (1976), quoting Mathews v. Lucas,427 U.S. 495, 510 (1976). The rational-basis test contains two substantive limitations on legislative choice: legislative enactments must implicate legitimate goals, and the means chosen by the legislature must bear a rational relationship to these goals. In an alternative formulation, the Court has explained that these limitations amount to a prescription that "all persons similarly situated should be treated alike."'" Thompson v. KFBIns. Co., 252 Kan. 1010, 1016-17 (1993).
The classifications established in the policy of USD 458 are based on the type of organization and the membership of the organization being classified. Presumably, the classifications ensure that the greatest community use of school facilities occurs when the facilities are used by community organizations. We believe the policy of USD 458 survives the rational basis test provided participants in the activity conducted in school facilities include only members of the organization. However, while it appears the policy of USD 458 does not on its face violate the equal protection clause of the fourteenth amendment to the United States constitution or section 1 of the bill of rights of the Kansas constitution, a violation could occur depending on actual application of the policy. Also, depending on actual application of the policy, violations of other constitutional provisions could occur. See Lamb's Chapel v. Center Moriches Union Free SchoolDistrict, 508 U.S. ___, 124 L.Ed.2d 352, 113 S.Ct. ___ (1993).
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Richard D. Smith Assistant Attorney General
CJS:JLM:RDS:jm